**Virgil Rudolph STONE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 51578.

Court of Criminal Appeals of Texas, Panel No. 3.

May 30, 1979.

Rehearing En Banc Denied July 18, 1979.

Donald W. Rogers, Jr., Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, Alvin M. Titus and Timothy P. Alexander, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and DALLY, JJ.

## OPINION

DOUGLAS, Judge.

Appellant was convicted for the offense of assault with intent to commit rape under the former Penal Code, Article 1162. The jury assessed his punishment at five years.

On the evening of June 18, 1973, the complainant answered her door and was confronted by appellant who displayed a police badge and requested admittance. She complied. Once inside, appellant threatened her with a pistol, ordered her to disrobe and said he intended to rape her. The complainant removed her pants and appellant took off his as well. Complainant then asked if she could turn off the lights and stereo and appellant agreed. After turning off the lights, the complainant escaped through a back door and ran to a neighbor's house to summon help. Almost immediately thereafter, the complainant's husband arrived home and found appellant alone in the living room dressing. Appel-

lant threatened him with the pistol and left the scene.

At the trial appellant took the stand and admitted being at the house on the night in question. He testified that he had been told that the complainant "was an easy lay," and that she had invited him in, consented to intercourse but ran from the house when her husband arrived. He also testified that he had displayed neither a badge nor handgun.

Initially, appellant contends that his oral confession was improperly admitted in violation of Article 38.22, V.A.C.C.P.[1]

The record reflects that appellant was interviewed by the police at his home and the police station. After the second interview, he requested a polygraph test. On June 21, 1973, he arrived at the Houston police station, was warned by a magistrate pursuant to Article 15.17, V.A.C.C.P., and administered a polygraph test. He was later informed that he had failed the test and that he "probably" would be charged. He was not, however, arrested at that time nor told that he could not leave.

F. O. Boulton, Jr. was investigating the incident on behalf of appellant's employer. He testified that appellant confessed to him at the police station and that he had previously agreed to and did relate the details of the confession to the police. After more questioning by the police appellant was arrested and charged with the offense.

■ Article 38.22, supra, provided at the time of the trial that:

"(a) The confession shall not be admissible if the defendant was in jail or other place of confinement or *in custody* of an officer at the time it was made, unless:

" * * *

"3. In connection with said confession he makes statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed, such statement shall not be admitted in evidence, unless it is witnessed by some person other than a peace officer, who shall sign the same as a witness." (Emphasis supplied)

No tangible evidence was discovered as a result of the confession. Consequently, the issue before us is whether appellant was "in custody" at the time he made his oral confession.

The instant case is similar to *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), in which the Supreme Court of the United States retreated from the sweeping language of *Miranda*. In *Mathiason*, the defendant, a parolee, voluntarily went to the police station after being requested to do so. Once at the station he was escorted into an office and told by an officer that, although he was not under arrest, the police believed that he had been involved in a burglary. The officer falsely stated that his fingerprints were found at the scene and that his truthfulness would possibly be considered by the district attorney or judge. During the interrogation the office door was closed and a police radio in another room could be heard. The Supreme Court held that, since the defendant voluntarily came to the police station and was informed that he was not under arrest, he was not in custody "or otherwise deprived of his freedom of action in any significant way."

"Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it,

---

1. In an unpublished per curiam opinion delivered September 15, 1976, we abated this appeal in order to permit the trial court to enter findings of fact concerning the admissibility of appellant's oral confession. The findings are now before us and the appeal has been ordered reinstated.

simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." The Court went on to hold that even the false statement as to the defendant's fingerprints had nothing to do with whether he was in custody. See *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *Hunter v. State*, 590 P.2d 888 (Alaska, 1979), 24 Cr.L. 2514.

Another case closely in point is *Hunter v. State*, supra. There the defendant had been questioned at his home by police officers twice before and was the prime suspect. He was asked to submit to a polygraph test and he went to the police station on his own for the test. No *Miranda* warnings were given before the test, and the defendant stated he felt that he "had" to take the test. During the test the polygraph operator told the defendant that he was not telling the truth. After the test ended, he confessed. The Alaska Supreme Court held that the defendant was not in custody and adopted the objective standard for determining custody which requires "some actual indication of custody, such that a reasonable person would feel he was not free to leave and break off police [interrogation]."

This Court has also rejected the "focus" rule as the test for custody. See *Scott v. State*, 571 S.W.2d 893 (Tex.Cr.App.1978); *Lovel v. State*, 538 S.W.2d 630 (Tex.Cr.App. 1976); *Allen v. State*, 536 S.W.2d 364 (Tex. Cr.App.1976); *Bailey v. State*, 532 S.W.2d 316 (Tex.Cr.App.1975).

In the case at bar, appellant had been interviewed by police officers twice before the day in question, at his home and the police station. On each of these occasions he had been allowed to leave. On the day of his confession, appellant went to the police station voluntarily and in his own car. He received warnings pursuant to Article 15.17, V.A.C.C.P., and was given a polygraph test. After the test was administered, appellant was advised that he had failed it and that he would "probably" be charged; however, at no time prior to the confession was appellant placed under arrest, told he was under arrest nor told that he could not leave the police station as he had done previously.

In short, based on the rationale of *Mathiason*, supra, and the cases cited above, appellant was not in custody at the time he made his confession. Consequently, the trial court did not err in admitting it under Article 38.22, supra, as it read at the time of trial.

■ The findings of fact and conclusions of law filed by the trial court should not be disturbed absent a clear abuse of discretion. *Williams v. State*, 566 S.W.2d 919 (Tex.Cr. App.1978); *McKittrick v. State*, 541 S.W.2d 177 (Tex.Cr.App.1976). None is shown here.

■ Next, appellant contends that the trial court improperly allowed the State to bolster the testimony of Boulton by asking a defense witness on cross-examination about Boulton's reputation for truth and veracity.

The following exchange occurred during the State's cross-examination of a defense witness:

"Q. (By Mr. Alexander) Mr. Barrow, are you familiar with a person named F. O. Boulton?

"A. Yes.

"Q. How do you know him?

"A. He's a security person with the telephone company.

"Q. Does he work in your office?

"A. No.

"Q. Have you been associated close with him during the course of your employment?

"A. No.

"Q. How do you know him then?

"A. Only investigation of thefts and things of that nature with the telephone company.

"Q. Do you know Mr. Boulton's reputation in the community in which he resides for being a truthful person?

"A. Yes.

"MR. ROGERS: Objection, Your Honor. He's attempting to bolster his own witness and I'd like to take him on voir dire examination.

"*VOIR DIRE EXAMINATION*

"Q. (By Mr. Rogers) Sir, have you ever discussed with anyone Mr. Boulton's reputation as a truthful person or heard anything about whether he's truthful or not?

"A. I have heard just assumptions, not anything that was fact.

"Q. Have you actually conversed with anyone concerning Mr. Boulton?

"A. No.

"MR. ROGERS: Your Honor, we'd submit the witness is not qualified to state an opinion as to Mr. Boulton's character, truth and veracity.

"THE COURT: It goes with the weight of the testimony, admissibility. Overrule the objection."

The objection was late; there is no showing that he did not have an opportunity to object earlier.

Appellant also contends it was reversible error for the trial court to allow Officer W. F. Hoch to testify to his conclusion or opinion as to whether the complainant was fabricating her story when he talked to her at the scene of the crime because this was improper bolstering.

During cross-examination of Officer Hoch by the prosecution the following exchange occurred:

"Q. Did it appear to you she was fabricating as she told you this event?

"MR. ROGERS: Objection. That invades the province of the jury.

"THE COURT: Overruled.

"MR. ROGERS: Your Honor, if I may, it's also a conclusion on the part of the witness.

"THE COURT: It's on cross examination. Overruled.

"MR. ROGERS: Please note our exception.

"Q. (By Mr. Alexander) You may answer the question. Officer, had she had time to make up a story before she told you about it?

"A. No, sir.

"Q. Did it appear to you she was fabricating a story as she gave it to you there?

"A. No, sir.

"MR. ROGERS: I object again as a conclusion, he's bolstering his witness, it's also invading the province of the jury to determine the truth. It's his opinion as to her telling the truth. It's not admissible.

"THE COURT: Overruled."

■ It is well settled that the ground raised on appeal must comport to the objection at the trial and that such objection must be timely made. In the instant case the defense attorney raises the issue of improper bolstering on appeal.

■ The record shows, however, that the witness had already answered the questions before the objections were made. This Court has consistently held that an objection must be made as soon as the ground of objection becomes apparent. *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr. App.1976), cert. denied 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250; *Forbes v. State*, 513 S.W.2d 72 (Tex.Cr.App.1974), cert. denied 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840; *Howe v. State*, 380 S.W.2d 616 (Tex. Cr.App.1964). To avoid waiver it is incumbent upon the defendant to show good reason for failure to timely object. *Patterson v. State*, 509 S.W.2d 857 (Tex.Cr.App.1974); *Hendrix v. State*, 474 S.W.2d 230 (Tex.Cr. App.1971); *James v. State*, 169 Tex.Cr.R. 526, 335 S.W.2d 603 (1960). Appellant has not shown good reason for his failure to timely object; therefore, any error is waived.

In his fifth ground of error, appellant alleges he was denied due process because of a material misrepresentation and suppression of evidence by the prosecution in connection with prior inconsistent statements made by the complainant to Houston Police Officer W. F. Hoch.

■ Specifically, appellant contends that although he was aware of the prior incon-

sistent statements by complainant he was not aware of subsequent reaffirmations contained in a police report.

In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court held that:

". . . unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.

" * * *

"The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."

The Court stated that the test for materiality imposes a higher burden on the defendant than the harmless error standard. In determining materiality, the omission must be "evaluated in the context of the entire record," and constitutional error is committed only "if the omitted evidence creates a reasonable doubt that did not otherwise exist." See Comment, Materiality and Defense Requests: Aids in Defining the Prosecutor's Duty of Disclosure, 59 Iowa L.Rev. 433, 445 (1973); Comment, *Brady v. Maryland* and The Prosecutor's Duty to Disclose, 40 U.Chi.L.Rev. 112, 125 (1972).

■ The record reflects that neither the complainant nor her husband gave written statements to the police. The police report appellant sought contained a rendition of complainant's story and in it she allegedly told the police that as she was running from the house she "thought" she heard someone else in the house and, once outside, she observed what "appeared" to be her husband's car. Appellant, however, had told her he had taken care of her husband so she ran to a neighbor's house. At the trial she testified that she did not presently recall seeing a car or hearing someone in the house because she was too frightened. The portion of the report appellant requested was not that part pertaining to her state-

ments as to the car and hearing another person in the house because defense counsel had already read the original offense report setting these out and introduced direct testimony of Officer W. F. Hoch to prove she had made the prior statements. Appellant's request went only to later progress reports which merely noted that both complainants subsequently "related the same as in the original report."

After a careful evaluation of the record, we hold that although the notations contained in the record may have aided defense the omissions are not so material as to create "a reasonable doubt that did not otherwise exist." *United States v. Agurs*, supra.

■ As to the testimony of Officer Hoch on cross-examination by the State to the effect that the statements attributed to the complainant in the original report could have been reported incorrectly for any number of reasons, the actions of the prosecutor in eliciting this testimony from a defense witness did not constitute a knowing or negligent misrepresentation of material facts, nor a failure to correct false testimony.

Next, appellant alleges that the trial court erroneously refused to require the State to produce the statements of the complainant and her husband for cross-examination in violation of *Gaskin v. State*, 353 S.W.2d 467 (Tex.Cr.App.1962), and *Zanders v. State*, 480 S.W.2d 708 (Tex.Cr.App.1972).

■ The record clearly shows that neither the complainant nor her husband made any written statements to the police or State. Therefore, the rules pronounced in *Gaskin* and *Zanders* are inapplicable. Moreover, since defense counsel had read the police report prior to trial and was aware of the witness' statements, no harm is shown. See *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr.App.1976); *Ogle v. State*, 548 S.W.2d 360 (Tex.Cr.App.1976). See also *Norman v. State*, 575 S.W.2d 34 (Tex.Cr. App.1979). Grounds of error six and seven are overruled.

Complaint is made that the State asked a "have you heard" question of appellant's reputation or character witness in bad faith.

The question asked the defense character witness was whether he had heard that appellant had been arrested for the rape and robbery of one D_____ H_____.

It is well settled that "have you heard" questions, proper in form, may be asked by the State to test the witness' knowledge if the prosecutor asks the question in good faith believing it has some basis in fact. *McIlveen v. State*, 559 S.W.2d 815 (Tex.Cr.App.1977); *Sternlight v. State*, 540 S.W.2d 704 (Tex.Cr.App.1976); *Pearce v. State*, 513 S.W.2d 539 (Tex.Cr.App.1974).

In the instant case the State produced an investigation report with the victim's name, D_____ H_____, listed under "name of complainant." The report also noted that appellant had been "arrested and released." We hold that these facts were sufficient indicia to show good faith on the part of the State in asking the question.

Ground of error nine alleges that the trial court erred in overruling appellant's objection to an argument by the State which was outside of the record. During argument at the guilt-innocence stage, the prosecutor said:

"Now, Gary Hardy's testimony was for the most part corroborating her story. Of course, there's a few discrepancies. It's kind of an unusual event for a man to come home, see lights on, walk up to turn them off and here's a guy on the couch with his pants down and your wife has just run out the door."

Appellant objected that the State was arguing outside of the record because the witness had testified that appellant was tucking in his shirt when he arrived. The court instructed the jury that they had heard the evidence and "will determine what the facts are."

This was sufficient to cure any error. See *Givens v. State*, 554 S.W.2d 199 (Tex. Cr.App.1977); *Torres v. State*, 552 S.W.2d 821 (Tex.Cr.App.1977); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976).

Appellant complains that the following argument by the State was improper:

"MR. ALEXANDER: I agree, I could have called them, too. I will tell Mr. Rogers why I didn't. I didn't call them because I don't believe their testimony. I don't believe they told this defendant she was a woman of loose character. I believe there was a lot of talk about a woman somewhere."

Prior to this, defense counsel had argued:

"Virgil Stone then took the stand after the State rested. I'm not going to go into his testimony in great lengths. You have heard what he stated. Basically he told you that he was managing a store, Brake Check store off the Gulf Freeway, that at the time of his particular incident he worked for Southwestern Bell; that he had had conversations with certain persons with the telephone company concerning K. S. H. He mentioned several names, I believe Kerry Horstmann, T. O. Bates and Hill something or another, Hillman. Now, you've not had the benefit of their testimony. They were neither called by the State or by the defense. I wish we could have called them, but unfortunately we didn't. So we don't know what was actually told Stone as far as K. S. H. He said he had heard about her."

It is apparent that the argument by the prosecutor was invited and was in response to the prior statements of defense counsel. See *Jones v. State*, 520 S.W.2d 755 (Tex.Cr. App.1975); *Hurd v. State*, 513 S.W.2d 936 (Tex.Cr.App.1974). No reversible error is shown.

Appellant next asserts that the trial court erred in overruling his objection to the State's argument wherein it sought to bolster its witness' testimony by stating that they are all truthful.

The State argued the following:

"MR. ALEXANDER: Well, we will never know what those three men would have testified to. I have just told you

why I didn't call them. I don't like to call any witness I don't believe is going to tell the truth, because that's the point of a jury trial."

This line of argument was invited by and in response to the argument of defense counsel noted above. We are unable to say that it was such as to mandate a reversal of the judgment. See *Brown v. State*, 535 S.W.2d 640 (Tex.Cr.App.1976).

Finally, complaint is made of the following argument by the State:

"... I guess everybody in this thing is in a big conspiracy to convict this defendant. I'm suggesting I'm conspiring to do my job. If that means putting him in the penitentiary, I plead guilty to that, because I think that is proper."

The complained of argument was a plea for law enforcement and as such was not improper. See *Rodriquez v. State*, 552 S.W.2d 451 (Tex.Cr.App.1977); *McCall v. State*, 540 S.W.2d 717 (Tex.Cr.App.1976); *Hostetter v. State*, 527 S.W.2d 544 (Tex.Cr. App.1975).

Finding no reversible error, the judgment is affirmed.

ROBERTS, Judge, dissenting.

I dissent to the majority's holding that the appellant was not "in custody" at the time he made the incriminating oral statement to Boulton. In arriving at its conclusion, the majority has misinterpreted the decisions of both this Court and the United States Supreme Court.

Article 38.22, Vernon's Ann.C.C.P., as effective at the time appellant made his oral confession, allowed inter alia the admission of voluntary oral statements made while in custody subsequently found to be true that resulted in the discovery of any tangible evidence conducing to establish the accused's guilt. The purpose and effect of this statute was to prevent the State from using against the accused inculpatory oral statements made by the accused while under arrest or in custody because such statements are often unreliable. *Harrison v. State*, 556 S.W.2d 811 (Tex.Cr.App.1977). Thus, Article 38.22, supra, was enacted as an effort to insure the accuracy and reliability of oral statements made while one is in custody or under arrest. It is uncontested in the present case that the appellant's oral statement to Boulton did not lead to tangible evidence of his guilt; therefore, the determinative question in the present case is whether or not the appellant was "in custody" at the time he made the statement.[1]

The majority relies on the Supreme Court's decision in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), as authority for its holding that the appellant was not "in custody." Unlike the majority, I would not view *Oregon v. Mathiason*, supra, as a retreat from the basic constitutional principles enunciated in *Miranda v. Arizona*,[2] but rather as an elucidation of those principles.

It must be initially observed that any determination of whether or not a person is "in custody" at the time he makes an incriminating statement invariably rests on the reviewing court's subjective interpretation of the circumstances under which the statement was made. Therefore, this determination must necessarily be made on a case-by-case basis and in light of the totality of the circumstances which existed at the time of the person's encounter with the police. *Ancira v. State*, 516 S.W.2d 924 (Tex.Cr.App.1974).

In *Oregon v. Mathiason*, supra, the Court held that since the defendant was not "in custody" under the facts of the case the police were not required to give *Miranda* warnings prior to the time the defendant confessed that he had stolen the property in question. The objective "facts" which led the Court to this conclusion were as follows:

---

1. Boulton testified that the appellant admitted that he went to the complainant's house armed with a pistol and with the intent to have intercourse with her; appellant also told Boulton

that after he left the complainant's house he disposed of the gun by throwing it in a bayou.

2. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The police officer left a note at the defendant's apartment asking the defendant to call him. When he arrived home, the defendant called the officer and the two mutually agreed to meet at the state patrol office which was two blocks away from the defendant's apartment. When the defendant arrived, the officer shook hands with him, told him that he was not under arrest, and took him into an office and closed the door. After the officer falsely stated that the defendant's fingerprints had been found at the scene, the defendant confessed to taking the property in question. The defendant was then permitted to leave. Under these facts the Court found that the defendant's ". . . freedom to depart was [not] restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of the ½-hour interview [defendant] did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody 'or otherwise deprived of his freedom of action in any significant way.'" Ibid at 429 U.S. 495, 97 S.Ct. 714.

It is this writer's opinion that the present case is clearly distinguishable on the facts from *Oregon v. Mathiason*, supra, relied on by the majority. In the present case, the appellant was summoned to the police station by investigating officers for the purpose of questioning him concerning the offense. When he met the officers at the police station, the appellant was taken before a magistrate and given his statutory warnings pursuant to Article 15.17, Vernon's Ann.C.C.P.[3] He was then administered a polygraph test and subsequently told that he had failed and would probably

be charged with the offense; he was then told to go wait alone inside a room at the police station. It was after these events had transpired that appellant gave the incriminating oral statement to Boulton. Immediately thereafter, appellant was formally arrested and placed in jail.

Officer Young's testimony that the appellant was not in custody while he was questioned inside the room at the police station by Boulton is belied by the facts of the case. If the appellant had not been "in custody" or under arrest at the time he arrived at the police station, why else then was he administered the warning pursuant to Article 15.17, supra, which enumerates the duties of the arresting officer and magistrate? If the appellant was not "in custody" at the time he was questioned by Boulton, why else then was he held in the room at the police station after he was told that he had failed the polygraph test and would probably be charged with the offense? When the appellant was told by the officers to wait in the room at the police station his liberty of movement was restricted; this constitutes an arrest. "It is not the actual physical taking into custody that will constitute an arrest. An arrest is complete whenever a person's liberty of movement is restricted or restrained." *Maldonado v. State*, 528 S.W.2d 234 (Tex.Cr.App.1975); *Hardinge v. State*, 500 S.W.2d 870 (Tex.Cr. App.1973). At the very least, at the time he was questioned by Boulton, the appellant had been significantly deprived of his freedom of action. *Miranda v. Arizona*, supra; *Oregon v. Mathiason*, supra.

It must be recognized that any confrontation with a police officer has some coercive

---

**3.** "Art. 15.17. Duties of arresting officer and magistrate

"In each case enumerated in this Code, the person making the arrest shall without unnecessary delay take the person arrested or have him taken before some magistrate of the county where the accused was arrested. The magistrate shall inform in clear language the person arrested of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys

representing the state, of his right to terminate the interview at any time, of his right to request the appointment of counsel if he is indigent and cannot afford counsel, and of his right to have an examining trial. He shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall admit the person arrested to bail if allowed by law."

aspects to it and that not every such confrontation constitutes custodial interrogation. *Oregon v. Mathiason*, supra. But when the accused's encounter with the police is accompanied by a restriction in his liberty of movement, the accused is "in custody" and, under the provisions of Article 38.22, supra, any incriminating oral statement made thereafter must subsequently prove to be true and lead to tangible evidence of guilt.

Nor can I agree with the majority's conclusion that this Court has rejected the "focus" rule as a test for determining when an accused has been placed in custody. *Bailey v. State*, 532 S.W.2d 316 (Tex.Cr.App.1975) does not support this conclusion, as contended by the majority. In *Bailey*, the defendant voluntarily returned to the scene of the offense and initiated the conversation with the investigating officers which led to the incriminating oral statement which he later sought to exclude as evidence at trial. The investigating officers testified that at the time the defendant made the incriminating statement he and two other persons were suspects in the case and that the investigation had not yet narrowed on the defendant. In concluding that this was not a custodial interrogation and that *Miranda* did not apply, we held:

> "As stated in *Ancira v. State*, Tex.Cr. App., 516 S.W.2d 924, the factor in determining the voluntariness of a statement which has consistently impressed us is 'whether or not the focus of the investigation has finally centered on the defendant.' *Ancira*, p. 927. . . . The fact that appellant had been free to go and had chosen to return in order to speak with Captain Edge removes this case from the proscription of *Miranda*. Had police officers begun to focus their investigation on the appellant after he had inaugurated the conversation, we would be faced with different problems."

Thus, in *Bailey v. State*, supra, this Court has reaffirmed the "focus" test which the majority erroneously believes we have abandoned. Likewise, the cases of *Scott v. State*, 571 S.W.2d 893 (Tex.Cr.App.1978); *Ford v. State*, 538 S.W.2d 633 (Tex.Cr.App.

1976), and *Allen v. State*, 536 S.W.2d 364 (Tex.Cr.App.1976), all cited by the majority, do not support the majority's conclusion.

I would conclude that under the standards announced by *Miranda* and its progeny the appellant was clearly "in custody" at the time he orally confessed to Boulton, and further, that this confession did not lead to tangible evidence conducing to establish the appellant's guilt. Therefore, the oral statement was inadmissible under the provisions of Article 38.22, supra, as it existed at that time.

The judgment should be reversed and the cause remanded.