**The STATE of Texas, Appellant,**

v.

**Irving W. MARKS, Appellee.**

**No. C14–89–00063–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 24, 1989.

Rehearing Denied Sept. 7, 1989.

Discretionary Review Granted Nov. 29, 1989.

Robert Schults, Houston, for appellant.

Richard A. Dawson, Richmond, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

OPINION

CANNON, Justice.

Appellant, the State of Texas, appeals from the trial court's order suppressing evidence. We hold appellee had no standing to challenge the evidence and set aside the order of the trial court granting appellee's motion to suppress.

The facts show that Houston Lighting & Power Co. [hereinafter HL & P], received a tip that electrical service meters were being tampered with by Klosik. HL & P contacted the Houston Police Department and, in cooperation with the Police, unsuccessfully tried to set up a meeting with Klosik. Thereafter, Klosik was arrested on an unrelated drug charge and cooperated with the police in contacting appellee, whose meter he had tampered with in the past. Klosik met appellee and again tampered with the meter with the police and HL & P officials in surveillance. Thereafter, HL & P, at the request of the police,

went to appellee's home and removed the meter. Subsequent testing of the meter showed it had been tampered with and appellee was arrested and charged with malicious mischief.

Prior to trial, appellee filed a motion to suppress the electric service meter and the tests performed upon it, on the grounds that the meter was seized within the curtilage of his home without a warrant. At a hearing on the motion to suppress, an HL & P supervisor testified that normal operating procedure would have required the company to remove and test the meter at the first sign of wrongdoing. Appellee contends that because HL & P deviated from its normal procedures in waiting three weeks before removing the meter, and then removing it at the direction of the Houston Police Department, the seizure of the meter amounted to a police action and was improper without a warrant. Finding that HL & P was acting as an agent for the police, the trial judge granted the motion to suppress the evidence.

On appeal, the State contends that because HL & P owned the meter and had an easement over appellee's property to allow them access to the meter, appellee had no reasonable expectation of privacy in the meter. Therefore, according to the State, appellee had no standing to challenge the evidence. We agree.

The property interests protected by the state and federal constitutions do not include property in which a person has no reasonable expectation of privacy. *Katz v. U.S.*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The test for determining whether there is a protected interest is: 1) whether the claimant has an actual subjective expectation of privacy and, if so, 2) if the expectation is one which society will recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

■ At the hearing, the State introduced evidence showing that the meter in question was the property of HL & P, not appellee. In addition, the State introduced a copy of the appellee's deed which contains an easement allowing HL & P to enter the property at any time to read or remove the meter. Because the record shows appellee did not own the meter and because the record shows his agreement with HL & P clearly stated that HL & P had a legal right to enter the premises to remove the device, we hold appellee had no reasonable expectation of privacy in the meter.

■ In addition, we find no state action in HL & P's removal of the meter. The crux of appellee's agency argument concerns HL & P's deviation from normal operating procedure by waiting three weeks to remove the meter from his property, when usual procedure would have required them to remove it immediately upon suspecting wrongdoing. Although there was a three week delay in HL & P's action, they did nothing that they were not legally entitled to do three weeks earlier. Accordingly, we hold that the delay in removing the meter did not make HL & P an agent of the police for constitutional purposes.

The standard of review to be applied in this case is whether the trial court abused its discretion. *State v. Moore*, 749 S.W.2d 601 (Tex.App.—Amarillo 1988, no pet.). We hold that the trial court, by improperly finding that HL & P acted as an agent for the police in removing the electric service meter, failed to follow the guiding rules set forth in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) and, accordingly, abused its discretion.

The order by the trial judge suppressing the evidence is ordered set aside.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the majority members of the panel, I record my respectful dissent. I would hold that the trial court acted properly in finding that the Houston Lighting and Power, ("HL & P") employees were acting as agents for the Houston Police Department when they entered upon appellee's property to remove the electric service meter. I would uphold the Court's order suppressing the use by the State of any evidence concerning the

electric service meter seized and the tests performed on the meter.

The Court entered an order on January 9, 1989, granting the Appellee's Motion to Suppress Evidence, which specifically included the following:

The Court finds that employees of Houston Lighting & Power Company were acting in conjunction with and as agents for officers of the Houston Police Department when the electric meter was seized from the outside of the Defendant's residence. The Court further finds that this seizure was without the aid of a warrant and that officers of the Houston Police Department could not have legally seized the meter on the Defendant's property without a search warrant. Since no search warrant was obtained and since agents of the Houston Lighting & Power Company were acting under the direction of officers of the Houston Police Department at the time of the seizure, said warrantless seizure violates the provisions of Article 1, Section 9 of the Texas Constitution, as well as the Fourth and Fourteenth Amendments to the United States Constitution and Article 38.23, Texas Code of Criminal Procedure.

The Appellee was charged with the offense of criminal mischief pursuant to Section 28.03, Texas Penal Code and was specifically charged with tampering with the electric meter attached to his home in order to alter the reading of the actual amount of electricity used. Appellee's Motion to Suppress was directed to the seizure of the meter from his home, without the aid of a warrant, by employees of HL & P acting at the direction of, and as the trial Court found, as agents of, the Houston Police Department.

The trial Court made specific findings of fact and conclusions of law in its order granting Appellee's Motion to Suppress Evidence. Specifically, the Court found that employees of HL & P were acting as agents for the Houston Police Department when they seized the electrical meter which was attached to the side of Appellee's residence. Specific findings of fact and conclu-

sions of law by a trial Court should not be disturbed on appeal absent a clear abuse of discretion. *Stone v. State,* 583 S.W.2d 410 (Tex.Crim.App.1979).

In support of the trial Court's findings, there was a stipulation entered into between the State and the Appellee at the hearing on the Motion to Suppress that: (1) the electric meter in question was attached to the exterior of the Appellee's residence, (2) that the meter was within the property line of his property, (3) that appellee did not give consent to the seizure by any law enforcement personnel or any person working with such personnel to gather evidence against him, and (4) that no warrant was involved.

Charles Riddle, Supervisor of HL & P's Field Services Department, testified that he received information on the Company's "diversion hot line" that a "professional" was tampering with meters in the Harris County area. After attempting to meet with this individual, Riddle contacted the Houston Police Department and cooperated with Officer Diaz in the investigation. Thereafter, a cooperative investigative effort ensued, which led to certain taped conversations involving the tampering of Appellee's electric meter.

Riddle further testified that the taped conversations and alleged tampering occurred on December 4, 1986, and that his plan was to remove the meter on December 4, 1986. He testified that an immediate seizure of the meter would have been the policy of HL & P in a purely internal or administrative investigation. He stated that HL & P delayed seizure of the meter at the request of Officer Diaz of the Houston Police Department and that HL & P subsequently seized the meter on December 23 at Diaz's request. After HL & P seized and tested the meter, the meter was turned over to Officer Diaz as State's evidence to be held by the Houston Police Department.

In order to seize the meter at the request of Officer Diaz on December 23, 1986, HL & P employees were required to cross the property line of appellee's residence, to leave the street or the sidewalk area and to

generally enter appellee's property and remove the meter which was attached to the side of his residence.

Warrantless searches are improper absent exigent circumstances, at least when the investigating officers have intruded upon the curtilage for the purpose of conducting a search for criminal activity. *United States v. Williams*, 581 F.2d 451 (5th Cir.1978). Clearly, officers of the Houston Police Department could not have entered into the curtilage of Appellee's residence to seize the meter or otherwise gather evidence of criminal activity which could be used against Appellee without a warrant. As stated by the Court of Appeals for the 5th Circuit:

> Any evidence which, for Fourth Amendment reasons, would have been excluded had it been gathered by the Government *pro se*, would, of course, have to be excluded if gathered by the only nominally private party. It would be excluded with the aim of deterring the government from further attempts to utilize knowingly the services of a private party to do for it that which it is forbidden to do for itself. *United States v. Clegg*, 509 F.2d 605, (5th Cir.1975) at 609.

That HL & P employees acting alone, could have seized the meter pursuant to the Public Utility Commission tariffs or by a recorded easement is of no relevance in this instance. When a private agency acts under the direction of, and as agent for, a state or federal law enforcement agency, constitutional principles are implicated. In *U.S. v. Mekjian,* the Court of Appeals for the Fifth Circuit stated:

> Fourth Amendment protections can be effectively undercut by the intervening agency of nongovernmental individuals. Accordingly, where federal officials actively participate in a search being conducted by private parties or else stand by watching with approval as the search continues, federal authorities are clearly implicated in the search and it must comport with fourth amendment requirements. *United States v. Mekjian*, 505 F.2d 1320 (5th Cir.1975) at 1327.

The evidence is sufficient to uphold the findings made by the trial Court that HL & P employees were acting at the direction of, and as agents for, the Houston Police Department when the meter was seized.

With regard to the seizure of the meter, HL & P deviated from its normal investigative techniques and allowed the meter to remain on the premises for approximately three weeks after the alleged tampering incident by virtue of a specific request by the Houston Police Department to do so. The timing of the meter's seizure was set by the Houston Police Department through Officer Diaz. Even before the seizure, agents of HL & P and the Houston Police Department were working jointly to meet with Klosik, the "professional" tamperor. The scope and methods of those attempted meetings were specifically directed at the behest of the Burglary and Theft Division of the Houston Police Department. Later, when HL & P and Houston police officers made a "deal" with Klosik, Klosik used HL & P phones to call people to set up additional tampering activities. This scheme was the joint involvement of Mr. Riddle and Officer Diaz. In regard to the specific incident leading up to the seizure of the meter on appellee's home, Mr. Riddle was present in the vicinity of the appellee's home in a "surveillance role" along with officers of the Houston Police Department at the time of the alleged tampering.

There is ample evidence to sustain the trial Court's findings regarding the status of the employees of HL & P at the time of the seizure of the meter. As *de facto* agents of the police, the entry of these employees onto the curtilage of Appellee's property without the benefit of a warrant resulted in an improper seizure of evidence. For these reasons, the trial Court's decision to suppress this evidence was not an abuse of discretion.

I would uphold the trial Court's order suppressing the evidence.