

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00059-CR

_____

MICHAEL DWIGHT WARD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 13th District Court
Navarro County, Texas
Trial Court No. D36157-CR

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

In early 2015, in Corsicana,[1] Texas, narcotics detectives Clint Andrews and Rickey Ragan, with the Navarro County Sheriff's Office, stopped a vehicle driven by Michael Dwight Ward[2] for failure to signal a left turn into a residence driveway. Pamela Wilson was Ward's passenger.[3] As a result of the stop, the detectives discovered a significant quantity of drugs on Ward and Wilson.

Following a consolidated trial, a jury convicted Ward of the offenses of possession with intent to deliver more than four but less than 200 grams of cocaine—this case—and more than four but less than 200 grams of phencyclidine—a companion case.[4] The trial court assessed Ward's punishment for each offense at fifty-four years' imprisonment, with the sentences to run concurrently. On appeal, Ward argues that insufficient evidence supports the verdicts against him, that the State violated its duty to supplement discovery,[5] and that the trial court erred when it denied Ward's discovery-related motion for continuance.

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2]Andrews testified that he was familiar with Ward before this incident.

[3]Wilson is Ward's co-defendant in this case. Pursuant to a plea agreement, Wilson pled guilty to two charges of possession of more than four but less than 200 grams of a controlled substance with intent to deliver.

[4]The State filed separate indictments on the two offenses. In our cause number 06-16-00060-CR, Ward appeals his conviction for possession of, with the intent to deliver, the controlled substance of phencyclidine. Ward filed a single brief in which he raises identical issues in each case. Consequently, this opinion discusses the issues.

[5]Ward filed a motion for new trial based on his argument that the State failed to supplement its discovery. The trial court denied Ward's motion. On appeal, Ward argues only that the State failed to supplement discovery, not that the trial court erred in denying his motion for new trial.

We affirm the trial court's judgment because (1) sufficient evidence supports the finding of Ward's guilt and (2) neither the State's alleged failure to supplement discovery, nor the denial of Ward's related motion for continuance, was harmful.

*(1)*     *Sufficient Evidence Supports the Finding of Ward's Guilt*

Ward argues that, since Ragan and Andrews found most of the drugs in Wilson's possession, the evidence does not prove that Ward possessed them or that Ward intended to distribute them. Ward points to Wilson's testimony that she could not remember whether Ward gave her the drugs, that she was a "heavy drug user," that she was capable of acquiring drugs from individuals other than Ward, and that they intended to "stash" the drugs. Notwithstanding conflicting testimony, there is legally sufficient evidence to support this judgment.

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may believe all of, portions of, or none of a witness' testimony. *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lacon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). Thus, if any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). Circumstantial evidence and direct evidence are equally probative in establishing guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

A person commits the offense of possession with intent to deliver a controlled substance if he or she knowingly or intentionally possessed a quantity of the controlled substance with the intent to deliver it. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010); *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Thus, "the State must prove that the defendant: (1) exercised care, custody, control, or management over the controlled

4

substance; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance." *Nhem*, 129 S.W.3d at 699. "Deliver" means to transfer, actually or constructively, a controlled substance to another person. TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (West Supp. 2016).

Intent to deliver may be shown by expert testimony, such as testimony from an experienced law enforcement officer, or by circumstantial evidence, such as the defendant's possession of contraband. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). In addition, intent to deliver may be inferred from the amount of drugs possessed and from the manner in which they are packaged. *Ingram v. State*, 124 S.W.3d 672, 675–76 (Tex. App.—Eastland 2003, no pet.). Courts have considered the following factors when making a determination on this issue: (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. *Moreno*, 195 S.W.3d at 325.

Though, admittedly, most of the drugs were found on Wilson, Andrews testified that, during his nine years' experience as a narcotics detective, it was common for drug dealers to travel with female companions and to pass any drugs in their possession to the female passenger whenever a police officer was in view. That is how Andrews interpreted the movements he observed between Wilson and Ward; when the detectives pulled into the drive of the residence behind the Ward vehicle, they noticed movement between Wilson and Ward.

5

When the detectives exited their vehicle, Andrews made contact with Wilson, while Ragan approached Ward. Ward exited his vehicle but continued to glance back at Wilson, who was still inside the car. At that point, Andrews asked Wilson to exit the vehicle; however, before doing so, Wilson "made furtive movements with her left hand attempting to place something in between the seats which later was found out to be cocaine crack pipes." When Wilson opened her hand, a crack pipe dropped to the ground. Andrews then placed Wilson in handcuffs and asked her if she had any other contraband. She responded, "[Y]eah, I got a lot." When Andrews inquired as to where the remaining contraband was located, she informed him that it was in her bra. Andrews contacted dispatch, asking for a female officer and additional units to be sent to their location. When the female officer arrived, Wilson withdrew from her bra a sock containing marihuana, phencyclidine,[6] crack cocaine, and powder cocaine. During the time Andrews was speaking to Wilson, he was also able to hear Ragan's conversation with Ward. When Ragan asked Ward for his identification, Ward produced two different credit cards believing they were his identification card. Andrews testified that Ward was behaving in a very nervous manner and paying close attention to Wilson in her encounter with Andrews.

Ragan's testimony corroborated Andrews' testimony. Ragan also testified that, when he asked Ward if he was in possession of any illegal contraband, Ward responded that he was and that it was in his pocket.[7] Ward allowed Ragan to retrieve the contraband from his pocket, and

---

[6]Andrews testified that phencyclidine is a "PCP formaldehyde type of substance," which can be used by dipping a cigarette down in it, then smoking it.

[7]Following his arrest, Ward's vehicle was searched. Inside the car, officers found pocket knives, glass pipes, a marihuana pipe, tweezers, and a small notebook. Andrews testified that the notebook contained currency amounts, along with names beside those amounts, "where someone owed whoever was in possession of the notebook money

Ragan believed it to be crack cocaine. In addition, Ragan testified that each individual rock was packaged separately and that, from his law enforcement experience, that was the method of packaging customarily used by individuals selling narcotics. Ragan also seized $715.00 in cash from Ward. Ragan agreed that the majority of the illegal contraband had been found on Wilson's person.

The Texas Department of Public Safety's laboratory report was admitted into evidence. The report contained an analysis of the drugs that had been seized from Ward and Wilson. The report reflected a total of 120 grams of cocaine and thirty-six grams of phencyclidine. The State also offered, and the trial court admitted, a photograph showing at least several individually wrapped baggies of rock-like substances. Also included in the State's photograph were two knives, at least nine tweezers, three lighters, several pipes, two large vials and three small vials of a brown liquid substance, and a large quantity of ten dollar bills and twenty dollar bills.

In addition, Andrews explained that he has made "hundreds, and hundreds, and hundreds" of narcotics arrests. He stated that it was uncommon for even heavy drug users to carry in their possession more than a gram of drugs. "It's pretty well known that the more you carry on you the more likely you are to get caught with it. It's easier to conceal or dispose of if you have a small amount." Andrews testified that, in his experience, when a person is found in possession of nearly six ounces of cocaine, he or she is a distributor, not simply a user. In addition, Andrews testified that the majority of cash found on Ward consisted of ten and twenty dollar bills, with only a few

---

for narcotics." Andrews testified that the notebook, along with its contents, are commonly found by officers during a narcotics investigation at the distribution level.

7

larger bills.  "That's the way 90 percent of those narcotics are sold is in $10, $20 increments."

Andrews stated that, because there were three or four small "PCP" bottles found with two large

bottles, that suggested they were packaged for resale.

Wilson testified that she was living with Ward at the time of the incident.  Initially,

Wilson's testimony coincided with Andrews' testimony.  When asked if she received the drugs

from Ward, she answered that she had, but she did not know where Ward had gotten them or from

where they came.

The following day, the State called Wilson to continue her testimony.  On cross-

examination, Wilson admitted that she did not remember if Ward had given her the drugs that were

in her bra.  On re-direct examination, she testified that Ward did give her the drugs.  On re-cross-

examination, she stated that her memory was "hazy" but that she could remember "[a] little, I

mean, where would I get them from?"  Wilson admitted that she had been using drugs before the

incident and that she was "high" at the time it occurred.  Wilson went on to testify that she knew

many people from whom she could purchase drugs and that she was not forced to get them from

Ward.  When asked what the pair intended to do with the drugs, Wilson responded that they were

on the way to "stash" them.

The jury was free to believe or disbelieve any portion of a witness' testimony.  *See Sharp*,

707 S.W.2d at 614.  Even considering Wilson's vacillating testimony, the evidence is sufficient to

support the trial court's judgments of conviction.  Andrews and Ragan testified that, after stopping

the vehicle, they observed furtive movements between Ward and Wilson.  Andrews, who had nine

years of experience in narcotics enforcement, stated that it was common for people who sell drugs

8

to have a female passenger in the car, and when police are observed, the driver hands the drugs to the female. Andrews testified that it was uncommon for people who simply use drugs to carry more than a gram at a time and that a person who is found to be in possession of nearly six ounces of cocaine is very likely distributing the drug. The laboratory report reflected that, between Ward and Wilson, the pair possessed 120 grams of cocaine and 36 grams of phencyclidine, including the two bags of cocaine retrieved from Ward's pocket. The amount and denominations of cash found in the car were indicative of drug distribution. Likewise, the notebook, along with its contents, are commonly located during narcotics investigations. The size of the vials and the packaging of the drugs indicated the drugs were intended for distribution, not use.

We overrule this point of error.

*(2)*     *Neither the State's Alleged Failure to Supplement Discovery, Nor the Denial of Ward's Related Motion for Continuance, Was Harmful*

In two intertwined arguments, Ward complains that the State failed, before trial, to supplement its discovery with recorded telephone calls and visits that took place during Wilson's pretrial confinement[8] and that the trial court erred in denying Ward's resulting request for a continuance to review that later-disclosed information. Without finding any such failure or error, we overrule these arguments, because neither was harmful.

Both arguments relate to Ward's standard discovery request to the State, which was sent July 15, 2015, and included requests for "written or recorded statements of the defendant" and "video and audio recordings that constitute or contain evidence material to any matter involved in

---

[8]Ward does not state what type of relief he seeks based on the State's alleged failure to supplement discovery.

this case." On September 4, 2015, in response to Ward's requests, the State delivered three computer disks containing, among other things, recordings of Ward's calls and visits during the time he was housed at the Navarro County jail from the date of his incarceration through August 19, 2015. Trial began February 8, 2016. On the second day of trial, Ward requested, for the first time, copies of the recordings of his calls and visits from August 20, 2015, through February 9, 2016. Apparently, Ward had informed his trial counsel that "there may be exculpatory things in the recordings." On that same day, in response to Ward's request, the State provided Ward an additional computer disk containing his numerous calls from August 20, 2015, through February 9, 2016, and another disk containing recordings of Ward's numerous visits during the same time period. On the morning of February 10, 2016, the State provided Ward with an additional recording of a telephone call he had made the night before. Ward informed his trial counsel that he believed he could point to the material portions of the recordings within "a few days." Ward then asked the trial court for a continuance, stating that he needed additional time to review the recorded calls and visits. The trial court granted Ward's motion and recessed until the following morning.

The next day, the State attempted to offer one segment, approximately thirty-five seconds long, of a recorded visit between Ward and Wilson occurring September 5, 2015. Ward objected. The trial court then granted a continuance until February 16, 2016, to allow Ward to review the recordings. On the morning of February 16, 2016, Ward asked for an additional continuance, suggesting he would need at least thirty days to review all of the jail records. The State informed the trial court that Ward had made several more calls from jail during the five-day recess and that,

10

if the trial court granted Ward's request, the situation could be perpetuated indefinitely. The trial court denied Ward's third motion for continuance, and the trial proceeded.[9]

Because of the State's alleged failure to timely disclose the supplemental information, Ward contends the State violated Article 39.14 of the Texas Code of Criminal Procedure. Article 39.14(a) governs discovery in criminal law matters and addresses what the State must produce and when it must produce it. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (West Supp. 2016).[10] The Article requires the State to disclose "to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control

---

[9]During trial, the State offered recordings of four calls made by Ward during his confinement in the Navarro County Jail. Ward placed the first call March 19, 2015, which was the day of his arrest. He placed two of the calls September 4, 2015, and the fourth call September 5, 2015. The last three calls were contained in the State's supplemental discovery, which it provided to Ward on February 9 and 10. Thus, by the time the calls were offered into evidence, the trial court had given Ward approximately one week to review them. Taking into consideration that Ward had been present during all of the telephone calls and, thus, would have been aware of what was said and when it had been said, a week would have been a reasonable amount of time in which to review the supplemental recordings.

[10]Article 39.14(a) provides in relevant part:

> Subject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of this code, as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state. The state may provide to the defendant electronic duplicates of any documents or other information described by this article. The rights granted to the defendant under this article do not extend to written communications between the state and an agent, representative, or employee of the state. This article does not authorize the removal of the documents, items, or information from the possession of the state, and any inspection shall be in the presence of a representative of the state.

TEX. CODE CRIM. PROC. ANN. art. 39.14(a).

11

of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX. CODE CRIM. PROC. ANN. art. 39.14(h).

In this case, the State provided discovery material to Ward months before trial began. Some of the material contained recordings of telephone calls made by Ward, as well as visits he had while awaiting trial. It was not until after trial began that Ward announced *he* believed there could be exculpatory evidence contained on the jail recordings and that *he* could point to the portions of the recordings in which the supposed exculpatory evidence existed. Specifically, Ward claims that the recordings contained Wilson's statements that Ward did not give her the drugs on the day of the incident.

Clearly, the State had a duty to provide Ward information in its care, custody, or control that it *knew* was material to Ward's defense.[11] The record, however, fails to show that the alleged exculpatory statements even existed. Moreover, Ward's delayed assertion regarding the alleged exculpatory evidence, which was not brought to the court's attention until the time of trial, indicates a lack of diligence on his part. Obviously, the conversations at issue included Ward and, at least some of them, involved conversations with Wilson. Regardless, Ward was clearly present during all of the conversations, thereby giving him the ability to point to any actual exculpatory evidence contained in the recordings and, then, to alert the trial court of the State's failure to provide the evidence.[12]

---

[11]*See Brady v. Maryland*, 373 U.S. 83 (1963) (prosecutor has affirmative duty to turn over material favorable to defense).

[12]This is not to say the State did not have a duty to provide exculpatory evidence; however, the State cannot produce information that does not exist.

We need not decide whether the State breached its duty to supplement its discovery with the recordings of every telephone call or jail visit involving Ward. The mere possibility that undisclosed information might have assisted the defense, or might have affected the outcome of the trial, does not establish materiality. *Stone v. State*, 583 S.W.2d 410, 415 (Tex. Crim. App. [Panel Op.] 1979). The State's omission must be evaluated in contrast to the entire record, and error is shown only when the omitted evidence creates a reasonable doubt that did not otherwise exist. *Id.* Moreover, exculpatory and impeachment evidence is material if its effective use may make the difference between a conviction and an acquittal. *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999).

In this case, the alleged missing exculpatory evidence was said to be Wilson's statement that Ward did not give her the drugs that were found on her person. On direct examination, Wilson stated that Ward did, in fact, give her the drugs; on cross-examination, Wilson changed her testimony and stated that Ward did not give her the drugs. Wilson followed the same pattern during re-direct examination and re-cross-examination. There is no question that Wilson's testimony was equivocal; however, the presentation of the alleged exculpatory statements would have done little to assist the trier of fact and, most likely, would have been cumulative of her previous vacillating testimony. Therefore, Ward cannot show that the presentation of the alleged exculpatory testimony would have made a difference in the outcome of the trial. We see nothing in this record suggesting any harm.

Ward also claims the trial court erred when it denied his motion for continuance of trial. "The control of the business of the court is vested in the sound discretion of the trial judge."

13

*Marquez v. State*, 921 S.W.2d 217, 223 (Tex. Crim. App. 1996). "[T]rial courts have broad discretion in managing the course of a trial generally." *Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005). "The trial court is vested with broad discretion to manage and control its docket in order to promote the orderly and efficient administration of justice while protecting the statutory and constitutional rights of all persons who come before the court." *Taylor v. State*, 255 S.W.3d 399, 402 (Tex. App.—Texarkana 2008, pet. ref'd). "The trial court has the power and obligation to control the courtroom for the purposes of ascertaining the truth, promoting judicial economy, and protecting witnesses." *Allen v. State*, 232 S.W.3d 776, 780 (Tex. App.—Texarkana 2007, no pet.).

"We review a trial court's ruling on a motion for continuance for abuse of discretion." *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007) (citing *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (per curiam)). To reverse a case stemming from a trial court's denial of a motion to continue, the movant must demonstrate that the denial was error and that it resulted in harm. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010). Diligence is a precondition for a continuance based on the need for additional trial preparation.[13] *Id.*

---

[13]In his motion for new trial, Ward attached his trial counsel's affidavit, which stated,

> The total amount of recorded video and audio produced to me during trial is approximately 150 hours. The two continuances granted totaled approximately 106 hours. If I had spent every second of the continuances reviewing the supplemental discovery, I could not have done so. Given that I had to eat, sleep, and maintain an otherwise busy law practice, I was only able to review a small fraction of the supplementary discovery during trial.

Trial counsel's statements neglect the fact that Ward was a party to the conversations and that he would have been helpful in determining the relevant exculpatory portions of the record, thereby negating the need to review the entirety of the "approximately 150 hours" of recordings. In fact, Ward announced in court that he would be able to direct his trial counsel to the relevant portions of the record.

14

For the reasons above, we find no actual prejudice. Because the record does not suggest that there was any harm in the absence of additional preparation time, we conclude that the trial court did not reversibly err by denying Ward's motion for a continuance. We overrule these arguments.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     November 22, 2016
Date Decided:       December 9, 2016

Do Not Publish

15