**Armon ALLEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51300.**

Court of Criminal Appeals of Texas.

April 28, 1976.

Rehearing Denied May 27, 1976.

---

Wilder & Tate, Henderson, for appellant.

Donald R. Ross, County Atty., and David P. Brown, Asst. County Atty., Henderson, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for voluntary manslaughter, wherein the jury assessed the punishment at twenty (20) years.

The record reflects that the appellant was charged with shooting and killing his wife.

At the outset appellant contends the court erred in excusing a juror, Roy Weaver, after the jury had been sworn and empanelled. Prior to any testimony being heard, Weaver testified he had a tightness in his chest the day before and had not been able to sleep that night. He related he had gone to a doctor's office and was found to have a temperature by a nurse and had been given a shot. Without objection, a note from James H. Mann, M.D., was offered into evidence. It read: "This man was at my office this morning with fever, aching all over, with influenza. Do you still want him to serve jury duty today?" Weaver admitted he had not personally seen the doctor, but the nurse had given him the note after he had been asked to wait in the doctor's waiting room. He stated he would not say he was disabled, but he didn't want to contaminate the jury as he had already been asked to stay on the other side of the jury room. He acknowledged, however, that serving would involve hardship and be detrimental to his physical well-being and asked to be excused.

The court excused Weaver based on his condition and the physical well-being of the other jurors. The appellant objected to the court's action.

Article 36.29, Vernon's Ann.C.C.P., provides:

"Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman; provided, however, when pending the trial of any felony case, one juror may die or be disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it. After the charge of the court is read to the jury, if any one of them becomes so sick as to prevent the continuance of his duty, or any accident of circumstance occurs to prevent their being kept together under circumstances under which the law or the instructions of the court requires that they be kept together, the jury may be discharged."

In *Griffin v. State,* 486 S.W.2d 948 (Tex. Cr.App.1972), we held that "disabled" as used in the foregoing Article means "any condition that inhibits the juror from fully and fairly performing the functions of a juror." In *Griffin* the juror during a noon recess was arrested and jailed for driving a motor vehicle while intoxicated. It was there held that the court did not abuse its discretion in excusing the juror and proceeding with the trial with 11 jurors.

In *Clark v. State*, 500 S.W.2d 107 (Tex.Cr. App.1973), this court held that there was no abuse of discretion where the trial court ordered the trial to continue with 11 jurors after one of the jurors became emotionally disabled because of his father-in-law's death. In *Maciel v. State*, 517 S.W.2d 789 (Tex.Cr.App.1975), the trial court ordered the trial to continue with 11 jurors after one juror suffered some sort of an attack and was taken to the emergency room of a hospital, where it was determined he had extremely high blood pressure. See also *Johnson v. State*, 525 S.W.2d 170 (Tex.Cr. App.1975).

Under the circumstances presented, we conclude the trial court did not abuse its discretion in the instant case. The ground of error is overruled.

Next, appellant complains that during voir dire examination of the jury panel the prosecutor was permitted to inform the panel that the State could not call the appellant as a witness and "in general allowing the District Attorney to comment on the failure of the Defendant to testify."

Appellant calls our attention to a portion of the examination where the prosecutor stated the appellant could subpoena and call witnesses in his behalf and could testify himself. A general objection was interposed and overruled. The prosecutor then stated that if the appellant did not testify the jury could not consider his failure to testify, but if he did testify the jury could pass on his credibility as any other witness.

■ In *McCary v. State*, 477 S.W.2d 624 (Tex.Cr.App.1972), and *Hill v. State*, 480 S.W.2d 670 (Tex.Cr.App.1972), we held that similar statements were not manifestly intended or were not of such character that the jury would naturally and necessarily take it to be a comment on the subsequent failure of the defendant to testify so as to offend the statute (Article 38.08, Vernon's Ann.C.C.P.) which prohibits comment on a defendant's failure to testify. It is well settled that for the statement to offend against the statute the language utilized must be considered from the jury standpoint. Further, the implication from the language used (having reference to the failure to testify) must be a necessary one.

■ Unlike *Hill* and *McCary* the appellant in the instant case testified in his own behalf rendering harmless any statements made by the prosecutor. We find no support in the record for appellant's assertion in his brief that such statements caused him to take the stand.

Further, the prosecutor's statement that if the appellant testified his credibility was to be judged as any other witness was a correct statement of the law and in accordance with the court's charge later given. See *Lombardo v. State*, 503 S.W.2d 780 (Tex.Cr.App.1974).

■ Appellant also complains that the court erred in permitting Sheriff Daniels to testify after he had been improperly excused after the rule had been invoked. The court sua sponte excused the Sheriff when the rule was invoked. Upon objection, the court stated the Sheriff was needed in attendance upon the court. When the Sheriff was called to testify at a separate hearing outside the hearing of the jury on the voluntariness of the confession, the appellant established that the Sheriff had not requested to be excused from the rule and had a bailiff in the courtroom, but when the court reiterated he desired the Sheriff in the courtroom, no further effort was made to establish what duties had been assigned the Sheriff or what conditions demanded his presence. There appears to be no showing of prejudice or abuse of discretion. See *Perry v. State*, 160 Tex.Cr.R. 8, 266 S.W.2d 171 (1954).

■ The rule is provided for in Article 36.03, Vernon's Ann.C.C.P. The object to be attained by placing witnesses under the rule is to prevent one witness from being influenced by the testimony of another. *Brown v. State*, 523 S.W.2d 238 (Tex.Cr. App.1975); *Carlile v. State*, 451 S.W.2d 511 (Tex.Cr.App.1970). The enforcement of the rule is within the discretion of the court. Article 36.04, Vernon's Ann.C.C.P. And it is in the discretion of the court to permit anyone to testify who has not been placed

under the rule. See Article 36.04, supra, n. 7, and cases there cited.

Further, it is noted that the Sheriff solely testified before the jury to the fact that he had taken the appellant to the county attorney's office where appellant was warned of his rights and had given and signed a written confession. No other witness for the State testified to such matters. For this reason also there would appear to be no error. *Landry v. State,* 96 Tex.Cr.R. 350, 257 S.W. 561 (1924). See also *Clary v. State,* 68 Tex.Cr.R. 290, 150 S.W. 919 (1912). Cf. *Moore v. State,* 493 S.W.2d 844 (Tex.Cr. App.1973).

While for the above reasons no error is reflected, trial judges, in all fairness, should not sua sponte excuse peace officers from the rule without there being good cause therefor. See *Brown v. State,* supra. Peace officers are not entitled to be excused from the rule merely by reason of their position as peace officers. See *Martinez v. State,* 96 Tex.Cr.R. 138, 256 S.W. 289 (1923).

In two grounds of error appellant complains the court erred in permitting Chief Deputy Mike Strong to testify concerning evidence found in appellant's house while he was in jail and which search was conducted without warrant and without consent, and further complains of the introduction of .22 cal. shells, pictures taken by Strong and a diagram of the house made by Strong. In another ground of error appellant complains of the admission of certain conversations that Deputy Danny Cook testified he had with appellant after the appellant was under arrest. A short resumé of the evidence is necessary to appraise these contentions.

At 11:38 p. m. on August 12, 1974, the Rusk County sheriff's dispatcher received a phone call from a person who identified himself as Armon Allen and stated, "My wife killed herself," and "Send somebody out here." He gave directions to the dispatcher, who sent Deputy Sheriff Cook to appellant's residence. Cook arrived along with the funeral home ambulance. Cook observed the appellant on the front porch.

As he walked up appellant stated, "My wife has done it this time," and "She has shot herself." Cook saw a woman on the couch inside the house. Inside he found the deceased, Dorris Allen, slumped on the couch, a wound about her right eye and a finger shot off. He observed a .22 cal. rifle nearby. He found one shell hull eight feet from the deceased and another eighteen feet from the deceased. In the bedroom he found a box of .22 cal. shells. The rifle and shell hulls and shells were introduced without objection. When a diagram of the two rooms made by Cook was offered, the only objection was that it was inaccurate as it did not include the whole house.

Cook testified, over objection, that appellant told him the deceased had shot herself while he was eating in the kitchen. When Cook did not see any dishes on the table, he asked if appellant had cleaned them up. Appellant then changed his story and stated he was seated on a chair drinking coffee when she shot herself and stated, "Well, Armon, I have done it this time." He further stated to Cook that he had "blackout spells and could have possibly blacked out and shot her," but that he "didn't know." After Justice of the Peace Barrett arrived, the appellant was arrested and taken to jail by Cook, who returned to the scene.

Randal Bryan, a funeral home owner, testified he received a phone call from the appellant sometime after 11 p. m., who stated, "Dorris has just shot herself." He asked for an ambulance. When Bryan arrived, he saw the appellant outside the house and was of the opinion the appellant had been drinking.

Deputy Strong testified that when he arrived at the scene on the night in question Deputy Cook, Bryan and Judge Barrett were there. The appellant had already been taken to jail. Over objection that he did not have a search warrant nor appellant's consent to search, Strong testified as to the condition of the deceased, his further investigation in taking pictures and making a diagram of the house and taking into custody .22 cal. shells. The diagram and photographs were admitted into evidence.

Appellant's extrajudicial confession taken several days later was admitted into evidence. In it he stated he had loaded his .22 cal. rifle after an argument with his wife. After his wife stated she wanted out of this "mess," the confession relates he shot the deceased in the hand while she was on the couch. He reloaded and then said, "I think I will just kill you." The confession then states he shot her in the head.

Testifying in his own behalf, appellant related that on the night in question his brother, Denton Allen, had come by his house and brought some whiskey; that after he, his wife and brother had driven to several other places and purchased more whiskey, they returned to his home; that he went to the outhouse and when he returned to the house his brother was trying to take his wife's pants off and she was resisting. He related he got a rifle and shot over the two. Thinking his brother had left, he entered the living room when his brother jumped him and in the struggle that ensued the rifle went off and his wife was hit and fell back on the couch. He testified that he and his brother decided the brother should leave as his wife disapproved of drinking and he had previously been in the penitentiary. Appellant then called the funeral home and the sheriff's office. In his testimony, the appellant discussed the diagram by Strong, the photographs and the deceased's position on the couch.

■ With regard to the search question, we observe that there was no objection to admission into evidence of the rifle and the shell hulls and the shells, which would waive any complaint on appeal. *McGrew v. State*, 523 S.W.2d 679 (Tex.Cr.App.1975). Further, this court has held frequently that the legality of the search need not be considered when the accused testifies to or otherwise produces evidence of the same facts or if such facts are in the record without objection. See *Stein v. State*, 514 S.W.2d 927 (Tex.Cr.App.1974); *Walker v. State*, 513 S.W.2d 39 (Tex.Cr.App.1974); *Hayles v. State*, 507 S.W.2d 213 (Tex.Cr.App.1974); *Bradley v. State*, 478 S.W.2d

527 (Tex.Cr.App.1972); *Warren v. State*, 514 S.W.2d 458 (Tex.Cr.App.1974).

■ With regard to the diagram of the house and the photographs made by Chief Deputy Strong, we observe the record reflects that the appellant caused the investigation to commence by calling the sheriff's office and the funeral home. After the Justice of the Peace arrived to act as coronor and was still conducting his investigation and the body of the deceased was present, Deputy Sheriff Strong arrived and made the photographs and diagram of which complaint is made. Under the circumstances, the search and admission of the diagram and photographs were proper. *Parsons v. State*, 160 Tex.Cr.R. 387, 271 S.W.2d 643 (1954); *Brown v. State*, 475 S.W.2d 938 (Tex.Cr.App.1971); *Tocher v. State*, 501 S.W.2d 921 (Tex.Cr.App.1973). We find no merit in appellant's search contentions.

■ Next, we consider the contention the court erred in allowing Deputy Cook to testify about the conversations he had with the appellant immediately after arriving at appellant's house following appellant's call to the sheriff's office. Appellant contends at the time he was under arrest, and he had not been warned of his rights. He bases his contention on Cook's testimony that after arriving at the scene he would not have allowed anyone to leave before he found out "information." While appellant has not narrowed his contention to a particular statement but includes all of the conversations, we observe the statements to Cook that appellant's wife had shot herself do not reflect reversible error since the dispatcher, Randal Bryan of the funeral home, and subsequently the appellant's sister, a defense witness, all testified without objection that appellant had stated that night his wife shot herself. As previously stated, if there was improper admission of evidence, there is no reversible error if the same facts are shown by evidence to which there is no objection. *Hayles v. State*, supra. Obviously what appellant is complaining about is Cook's testimony that appellant, after changing his story about

his position when his wife shot herself, also stated he had blackout spells and could have blacked out and shot her but he "didn't know."

 In light of appellant's call to the sheriff's office, it is clear Deputy Cook's inquiries were part of a general investigation into an unsolved crime, see *Brown v. State*, 475 S.W.2d 938 (Tex.Cr.App.1971), and were within the ambit of a general on-the-scene investigatory process, see *Tilley v. State*, 462 S.W.2d 594 (Tex.Cr.App. 1971); *Higgins v. State*, 473 S.W.2d 493 (Tex.Cr.App.1971), which had not yet shifted to the accusatory or custodial stage, see *Adami v. State*, 524 S.W.2d 693 (Tex.Cr. App.1975).

The record shows that the remarks were made by appellant prior to being arrested or taken into custody, and there is nothing to indicate he reasonably so considered himself. The actual arrest came later. While Cook did make the statement he would not have let anyone leave until he got "information," the record, when read as a whole, does not reflect the appellant was deprived of his freedom in any significant way prior to the remarks complained of. Further, under the circumstances, the remark that he may have shot his wife, he "didn't know," is rendered harmless in light of his written extrajudicial confession that he shot his wife which was also introduced into evidence after it was found by the court to have been voluntarily given.

 Appellant lastly complains of the trial court's refusal to allow him to file "an amended motion for new trial." From his brief it is difficult to determine which motion he has reference to when the whole record is considered. The verdict was returned on January 31, 1975. On February 7, 1975, a letter from the appellant was delivered to the trial judge while he was presiding at other trials. He did not open the letter until February 10, 1975. The letter stated, "I the defendent (sic) would like an appeal be set fourth (sic) so said defendent (sic) could show cause for new trial." The letter also requested appointment of counsel. On the same date, the court showed the letter to appellant's counsel. The court considered the letter a premature notice of appeal and a request for an attorney on appeal. The court then agreed with counsel that sentencing should take place the next day. On February 11, 1975, the trial judge observed prior to sentencing that no motion for new trial had been filed. At this point, appellant's counsel said he had a "short form" motion for new trial to be filed, but it would have to be amended. The court pointed out the time for filing a motion for new trial had expired. Counsel asked that appellant's letter be considered as a motion for new trial and he be allowed to file an amended motion for new trial. While the trial judge allowed file marks as of February 11th to then be placed on the letter and the "short form" motion, he ruled that neither had been timely filed and he would not consider the same. Sentence was then imposed. On March 3, 1975, an amended motion for new trial was filed. There was no action taken on such motion.

The letter appears to be just what the trial court considered it to be—a premature notice of appeal and a request for the appointment of counsel. There was *nothing* set forth as grounds for a new trial. The "short form" motion, of course, was not timely filed in accordance with Article 40.-05, Vernon's Ann.C.C.P., and presents nothing for consideration. *Morton v. State*, 502 S.W.2d 121 (Tex.Cr.App.1973). The amended motion for new trial filed March 3, after sentence, and *without leave of court* as required by Article 40.05, supra, did not call for any action on the court's part. Further, nothing in the letter or the motions would have called for the presentation of evidence at a hearing on such motions in order to preserve error nor does appellant so suggest.

The ground of error is overruled.

The judgment is affirmed.