TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00176-CR


 NO. 03-01-00177-CR






James Gibson Moore, III, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NOS. 00-187-K26 & 00-188-K26,


HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING






 Appellant James Gibson Moore, III was convicted by a jury on two counts of
indecency with a child and one count of aggravated sexual assault. Appellant's two daughters, aged
thirteen and fifteen at the time of trial, were the victims of these offenses. The jury assessed
punishment at ten years for each conviction for indecency with a child, and thirty years for the
conviction for aggravated sexual assault. Appellant raises seven points of error. We affirm the
judgments.


BACKGROUND

 Appellant was indicted on eight counts; he was acquitted on five. Appellant was
convicted for one count of indecency with a child against his younger daughter. This offense
occurred on May 14, 1996. He was convicted for two counts involving his older daughter. The
offense of indecency with a child occurred on September 21, 1992; the aggravated sexual assault
occurred on January 7, 2000. During the guilt/innocence phase of the trial, testimony describing
these incidents was given by the two victims, a clinical social worker who had been meeting with
the girls in therapy sessions, and appellant.

 The complaining witnesses testified to various incidents of inappropriate behavior
by their father during the times they were with him at his house. (1) Examples of conduct described
as inappropriate were that appellant would go to the bathroom in front of his daughters, walk around
in his underwear, and sleep with them. Appellant's daughters stated that when their father slept with
them, he would cuddle and wrap his legs around theirs, pressing himself against them. There was
also testimony that appellant videotaped his daughters in the shower with their stepmother.

 Appellant's younger daughter testified that, on one particular occasion, appellant sat
down in his recliner and put her on his lap. He then reached under her clothes and proceeded to rub
her vagina for a number of minutes. In a separate instance, the elder daughter testified that appellant
required her to shower with him, even though she objected. Once in the shower, appellant made her
wash his body. When she did not wash his penis, appellant took her hand and required her to do so. 
She also testified that two weeks after this shower, appellant made her take a bath with him where
he touched his penis to her vagina. Without reference to a specific incident, she stated that her father
touched her breasts and vagina on several occasions.

 Although much time had passed since the two acts leading to indecency with a child
convictions had occurred, neither daughter made an outcry until after the January 7, 2000 aggravated
sexual assault occurred. Both appellant and his older daughter, the victim in this particular incident,
testified as to the occurrence. She stated that she was in the bedroom watching television when her
father came into the room and got in bed with her, wearing only a pair of boxer shorts. While laying
in bed, appellant put his finger in her mouth. After this occurred, she attempted to leave the room,
but because the door was locked, she laid back onto the bed. Appellant then forced her to perform
oral sex on him. Appellant's rendition of the incident is somewhat different. He claims that he and
his daughter were watching television while lying in bed as they often did. He explained that he had
been drinking, and because of his drunken state, he said that he began sucking his daughter's finger. 
Then he claims that she voluntarily grabbed his penis and touched her mouth to it. After this oral
contact, which he said lasted only momentarily, she jerked her head up and left the room. He admits
this conduct occurred and that it was wrong, but he disputes the State's contention that he forced her
to do anything.


DISCUSSION

Medical Treatment Exception to the Hearsay Rule

 In his first point of error, appellant argues that the trial court erred in admitting
hearsay testimony in which a social worker recounted statements the victims made to her during
therapy sessions. Some of these statements include the victims' description of the offenses. After
appellant objected on hearsay grounds, the State succeeded in getting these statements admitted
under the medical purposes and treatment exception to the hearsay rule. That exception allows for
admission of the following hearsay statements:


 Statements for Purposes of Medical Diagnosis or Treatment. Statements
made for purposes of medical diagnosis or treatment and describing medical
history, or past or present symptoms, pain, or sensations, or the inception or
general character of the cause or external source thereof insofar as reasonably
pertinent to diagnosis or treatment.




Tex. R. Evid. 803(4). Appellant challenges the application of Rule 803(4) because he claims that
the witness is not part of the medical profession and thus, any statements made to her could not have
been made for purposes of medical diagnosis or treatment.

 The witness, Judy Cardinale, began meeting with the victims for therapy sessions a
short time after their initial outcry. Since their first meeting, Cardinale met with the victims about
once or twice per week up to the time of appellant's trial. The girls participated in individual and
group therapy. In sum, Cardinale met with the girls for about forty therapy sessions, thirteen or
fourteen of which were individual meetings.

 Cardinale's testimony included a general discussion about the types of characteristics
and symptoms displayed by many young children who have been the victims of sexual assault. She
also testified about her observations and opinions concerning appellant's daughters. Part of her
testimony, which was given without objection, concerned each girl's symptoms and treatment.
However, Cardinale's testimony repeating statements made by each victim, during their therapy
sessions, about specific instances of abuse, elicited appellant's hearsay objection. The State
maintains that these statements, describing the specific acts of abuse and identifying appellant as the
aggressor, are within the scope of Rule 803(4) because they were made to a licensed therapist in the
course of her diagnosis and treatment of the victims. 

 The medical treatment exception to the hearsay rule is based on the assumption that
the patient appreciates that the effectiveness of the treatment may depend on the accuracy of the
information provided to the physician. Fleming v. State, 819 S.W.2d 237, 247 (Tex. App.--Austin
1991, pet. ref'd). In applying the medical treatment exception to cases involving child abuse, courts
have allowed the victim's statements concerning the identity of the attacker to be admitted because
treatment of child abuse must begin with removing the child from the abusive setting. Id.; see also
Beheler v. State, 3 S.W.3d 182, 189 (Tex. App.--Fort Worth 1999, pet. ref'd); Molina v. State, 971
S.W.2d 676, 683-84 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd). While appellant does
contend that the statements identifying him were inadmissable hearsay, the crux of his appeal is that
the statements were made to a person who is not a member of the medical profession and who lacks
medical training.

 In every case we have found, save two, in which statements were introduced using
Rule 803(4), the witness would have satisfied the Legislature's definition of a physician or health
care provider as defined in the medical malpractice statute. (2) See Gregory v. State, 56 S.W.3d 164
(Tex. App.--Houston [14th Dist.] 2001, no pet. h.) (registered nurse allowed to testify about
statements made and symptoms of child abuse victim); Beheler v. State, 3 S.W.3d 182 (Tex.
App.--Ft. Worth 1999, pet. ref'd) (sexual assault nurse examiner at hospital testified about interview
with patient prior to conducting physical exam); Molina v. State, 971 S.W.2d 676 (Tex.
App.--Houston [14th Dist.] 1998, pet. ref'd) (physician testified to statements made by victim
during physical examination); Torres v. State, 807 S.W.2d 884 (Tex. App.--Corpus Christi 1991,
pet. ref'd) (nurse allowed to testify under Rule 803(4) about victim's answers to questions asked
during collection of samples for "rape kit"); Fleming v. State, 819 S.W.2d 237 (Tex. App.--Austin
1991, pet. ref'd) (physician and mental health therapist testified about victim's statements). But see
Puderbaugh v. State, 31 S.W.3d 683 (Tex. App.--Beaumont 2000, pet. ref'd) (clinical social worker
who practiced with physicians in a family office practice testified about statements made during
therapy by a victim of child abuse); Gohring v. State, 967 S.W.2d 459 (Tex. App.--Beaumont 1998,
no pet.) (therapist, under supervision of licensed psychologist, could testify about victim's
statements). (3)

 We recognize that some courts have allowed therapists to testify about statements
made to them during the course of individual and group therapy sessions. However, to ensure that
the medical treatment exception's assumption that patients seeking medical care will be honest and
truthful in relaying symptoms in order to obtain proper and effective treatment remains intact, the
offered witness's qualifications must be shown to conform to the rule. See Fleming, 819 S.W.2d at
247. If a witness's testimony fails to meet Rule 803(4)'s criteria requiring that the statements be
made to medical personnel in the course of diagnosis and treatment, then that testimony cannot
overcome the hearsay rule.

 In the present case, Cardinale testified about statements made to her by appellant's
daughters. She related, with some detail, what each girl had told her describing various instances
of abuse. Although Cardinale's testimony describing what each victim told her about the specific
offenses for which appellant was convicted was brief, it accurately repeated the testimony given by
each victim. In addition to the specific offenses for which appellant was convicted, Cardinale
testified that other instances of abuse had occurred with some frequency. While this Court has
recognized that such statements may be admissible as having been made for purposes of treatment,
see Fleming, 819 S.W.2d at 247, we do not believe that the State carried its burden in this case for
admitting Cardinale's testimony.

 Cardinale's qualifications, which perhaps could establish her connection with the
medical profession, are not well identified in the record. She testified that she is licensed by the
State of Texas as a clinical social worker and an advanced clinical practitioner. She also stated that
she is licensed as a psychotherapist, but is not licensed as a psychiatrist or psychologist. The State
did not elicit testimony to explain how a psychotherapist differs from a psychiatrist or psychologist
and exactly what type of training is required to become a licensed psychotherapist. Furthermore,
Cardinale testified that she did not possess any medical degrees and could not prescribe medicine. 
However, she did testify that she provides a medical diagnosis to each of her clients using the
Diagnostic and Statistical Manual. The record does not contain any testimony explaining how
Cardinale uses this Diagnostic and Statistical Manual or what type of training she has received in
order to provide a medical diagnosis.

 Although the State proved that Cardinale has received her master's degree in social
work and is licensed by the State as a clinical social worker, the State failed to present proof of her
qualifications for licensure. The State did not present evidence concerning the requirements for
licensure and whether, as a social worker who provided medical diagnoses, Cardinale received
special training, was answerable to a board which governed licensed social workers, or had to meet
any advanced continuing education requirements. These factors tend to indicate membership in a
profession. Because the State did not establish any of these with respect to Cardinale's occupation,
it failed to meet its burden under Rule 803(4). Because the record does not have sufficient
information for us to determine that Cardinale has received medical training and can qualify as a
member of the medical profession, and because Rule 803(4) clearly requires the statements by the
declarant be made for purposes of medical diagnosis or treatment, we hold that the trial court erred
in admitting Cardinale's testimony over appellant's objection.


Harm Analysis

 Error in the admission of evidence is subject to a harm analysis under Rule 44.2(b)
of the rules of appellate procedure. See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998). A violation of the evidentiary rules that results in the erroneous admission of evidence is
nonconstitutional error. See King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); Tate v.
State, 98 S.W.2d 887, 890 (Tex. App.--Austin 1999, pet. ref'd). Any nonconstitutional error "that
does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). A substantial right
is affected when the error had a substantial and injurious effect or influence in determining the jury's
verdict. See King, 953 S.W.2d at 271. A criminal conviction should not be overturned for
nonconstitutional error if the appellate court, after examining the record as a whole, has fair
assurance that the error did not influence the jury, or had but slight effect. See Johnson, 967 S.W.2d
at 417. It is well-established that the improper admission of evidence does not constitute reversible
error if the same facts are proved by other properly admitted evidence. See Brooks v. State, 990
S.W.2d 278, 287 (Tex. Crim. App. 1999) (holding that any error in the admission of hearsay
testimony was harmless in light of other properly admitted evidence proving the same fact).

 Appellant contends that the erroneous admission of Cardinale's testimony caused
harm because it was the only evidence corroborating the victim's testimony about the incident for
which appellant was convicted of aggravated sexual assault. But this evidence did not require
corroboration because both the victim and appellant testified to the incident. Although appellant
claims that he did not force his daughter to perform any sexual acts, the victim testified to the
contrary. Furthermore, Cardinale's testimony merely summarized, in a single sentence, a factual
depiction of the incident in question. Cardinale did not testify in any detail whatsoever as to whether
the act was forced or voluntary. Therefore, we find the admission of her testimony was harmless. 
Accordingly, we overrule appellant's first issue.


Other Points of Error

 In his second and third points of error, appellant contends that the trial court erred in
proceeding with the trial over his objection after a juror became ill. Appellant claims that by
continuing the trial without a full jury panel, the trial court denied him his constitutional and
statutory rights. Tex. Const. art. XIII, § 5; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp.
2002). On the fifth day of the jury trial, a juror reported to the court that he was suffering from a
severe gastrointestinal illness and was too weak to come to court. Although appellant objected and
requested the trial be postponed, the trial court chose to proceed under article 36.29, which allows
a trial to proceed with fewer than twelve jurors if a panel member becomes disabled. See Tex. Code
Crim. Proc. Ann. art. 36.29(a). (4)

 The court of criminal appeals has interpreted "disabled" as involving physical illness,
mental condition, or emotional state which hinders one's ability to perform one's duties as a juror.
Landrum v. State, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990). The term disabled can also mean
any condition that inhibits the juror from fully and fairly performing the functions of a juror. Griffin
v. State, 486 S.W.2d 948, 951 (Tex. Crim. App. 1972). The determination as to whether a juror is
disabled is within the discretion of the trial court. Brooks v. State, 990 S.W.2d 278, 286 (Tex. Crim.
App. 1999). Absent an abuse of that discretion, no reversible error will be found. Id.

 Appellant contends that a stomach ailment is insufficient to render a juror disabled
because such an illness is temporary. However, we note that other courts have found that jurors who
complained of other temporary illnesses that impaired their ability to perform the functions of a juror
were properly determined by the trial court to be disabled. See Hughes v. State, 787 S.W.2d 193,
195 (Tex. App.--Corpus Christi 1990, writ ref'd) (juror excused after complaining of nausea,
headaches, and vomiting); Allen v. State, 536 S.W.2d 364, 366-67 (Tex. Crim. App. 1976) (juror
properly determined to be disabled after having been diagnosed with influenza). A juror's inability
to come to the courthouse due to a severe gastrointestinal ailment provides some evidence of the
requisite incapacity from performing the duties assigned to that juror that the trial court may consider
in making a determination of disability. Although a stomach ailment is only temporary, it remains
within the trial court's discretion to determine whether this juror had become disabled. The situation
here is indistinguishable from that in Hughes and Allen. We therefore cannot say that the trial court
abused its discretion in determining that this juror's ailment rendered him disabled. Points of error
two and three are overruled.

 Appellant's fourth issue on appeal is that the trial court erred in overruling his
objection to the testimony of Paul Szendrey discussing whether tapes seized from appellant
contained pornography. Szendrey testified that he was the supervisor of the property and evidence
section of the Williamson County Sheriff's Department. On cross examination, Szendrey was asked
whether, as part of his job, he had viewed the approximately twenty videotapes taken from appellant. 
Szendrey responded that he had viewed the tapes. Appellant then asked, referring to a particular
videotape, "Any reference to any nudity at all was solely contained on this particular video tape,
correct?" Szendrey answered in the affirmative. Immediately thereafter, on redirect examination,
the State asked, "Sir, there were some tapes of other pornographic images in those beta and video
tapes of adults, wasn't there?" After appellant's objection, the State responded that appellant had
opened the door for this testimony by his previous question. The trial court overruled the objection. 

 Appellant claims that this was error because his questioning of Szendrey was confined
to an inquiry of whether there were naked images of his daughters on one of the tapes. Appellant
contends that the State's question improperly sought admission of immaterial extraneous bad acts. 
Tex. R. Evid. 404(b). The State responds that appellant's question was broader in scope than
appellant now claims and that it resulted in giving the jury a false impression. When a witness takes
the stand and leaves a false impression, the witness "opens the door" to the admission of evidence
that would correct the false impression. Murphy v. State, 587 S.W.2d 718, 722 (Tex. Crim. App.
1979). In determining whether a false impression was created, however, we must examine the
testimony in context, rather than in a vacuum. Prescott v. State, 744 S.W.2d 128, 131 (Tex. Crim.
App. 1988).

 Appellant's question did not specifically reference which persons were alleged to
have appeared on the videotape. The State argues that Szendrey's answer to appellant's question
implied that only one of the approximately twenty videotapes contained pornography. Based on the
entirety of Szendrey's testimony, we believe that the impression received from his answer to
appellant's question was that only one tape contained nudity. Appellant did not make it clear that
he was asking Szendrey solely about naked pictures or videos of the victims. Because a false
impression was created as to whether only one of the twenty videotapes contained pornographic
images, the State was entitled to ask a follow-up question to correct that impression. We overrule
appellant's fourth point of error.

 Appellant next complains that the trial court erred in not defining "caused" in the jury
charge. At the conclusion of the trial, the charge read to the jury inquired whether the defendant
caused his daughter to have oral contact with his sexual organ. Appellant's contention was that
because the victim acted voluntarily, as opposed to being forced, that he had not caused her conduct. 
Accordingly, he requested that the court define the word "caused" to accommodate his defense. The
trial court denied his request.

 If a phrase, term, or word is statutorily defined, the trial court must submit the
statutory definition to the jury. Alexander v. State, 906 S.W.2d 107, 111 (Tex. App.--Dallas 1999,
no pet.); Willis v. State, 802 S.W.2d 337, 342 (Tex. App.--Dallas 1990, pet. ref'd). Words that are
not statutorily defined are to be given their common, ordinary, or usual meaning. Roise v. State, 7
S.W.3d 225, 242 (Tex. App.--Austin 1999, pet. ref'd). No specific instruction is required for these
words in the jury charge. Martinez v. State, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996) (no
definitional instruction was required for word "presence" as it had not been administratively or
legislatively defined). Jurors are presumed to know and apply the common and ordinary meaning
of words. Cuevas v. State, 742 S.W.2d 331, 346 (Tex. Crim. App. 1987). Only if the word or term
does not have a common meaning that the jurors can be fairly presumed to know and apply must a
definition be supplied. Holmes v. State, 962 S.W.2d 663, 674 (Tex. App.--Waco 1998, pet. ref'd,
untimely filed).

 Although appellant acknowledges that "caused" is not defined in the Penal Code, he
believes that the circumstances of this case warrant a specific definition in the jury charge. That
belief rests on the fact that his defense to the aggravated sexual assault charge is that the act was not
forced or caused by him. In support of his argument, appellant relies on Whaley v. State, 717 S.W.2d
26, 31 (Tex. Crim. App. 1986), for the proposition that a definition of a word, which would normally
remain undefined in the charge, may be required in certain instances depending on the facts of the
case. In Whaley, the court held that, although originally an undefined term, "constructive transfer"
had acquired a particular meaning requiring a definition in the jury charge. We find appellant's
reliance on Whaley unpersuasive.

 This case differs from Whaley because "constructive transfer" is a term of art found
within the statutory definition of "deliver" as it pertains to controlled substances. As such, it
assumes a particular meaning when used within that definition. (5) "Caused" has not acquired a
particular meaning when used in conjunction with an aggravated sexual assault charge. "Caused"
is not a term of art. Its ordinary and common meaning controlled its usage and the jury is presumed
to be able to apply that meaning. The trial court did not err in refusing to include a definition of
"caused" in the jury charge. We overrule appellant's fifth point of error.

 In his sixth and seventh points of error, appellant contends the trial court erred in
denying him a hearing under Texas Rule of Evidence 104(b) to determine the preliminary question
of the admissibility of extraneous offenses offered by two witnesses during the punishment phase
of the trial. In a bench conference, prior to beginning the direct examination of the first witness, the
State informed the court that it had given proper notice of its intent to call these witnesses. Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2002). In addition, this discussion informed
the court of the nature of the testimony.

 The trial court has the responsibility of determining the threshold admissibility of
extraneous offense evidence at the punishment phase; that is, the court must make an initial
determination at the proffer of the evidence that a jury could reasonably find beyond a reasonable
doubt that the defendant committed the extraneous offense. See Mitchell v. State, 931 S.W.2d 950,
954 (Tex. Crim. App. 1996); see also Harrell v. State, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994). 
Appellant cites no authority to support his claim that, under rule 104(b), this initial determination
must be made by the court following a hearing as opposed to some other form of preliminary review.

 While the trial court made no express ruling on the admissibility of the extraneous
offenses, its denial of appellant's request for a hearing following the State's proffer constitutes an
implied ruling of admissibility. Further, the trial court gave the proper jury instruction on burden
of proof of extraneous offenses, and appellant does not contend that the State failed to prove the
extraneous offenses beyond a reasonable doubt. An appellate court reviews the trial court's decision
to admit extraneous offense evidence under the abuse of discretion standard. See Mitchell, 931
S.W.2d at 953. We hold that the trial court's refusal to hold a hearing outside the presence of the
jury on the admissibility of extraneous offense evidence resulted in no harm to appellant. No abuse
of discretion is shown in the trial court's admission of evidence of extraneous offenses. Appellant's
sixth and seventh points of error are overruled.


CONCLUSION

 We hold that the admission of Cardinale's testimony under the medical treatment
exception to the hearsay rule was error because the State failed to show that its witness was qualified
as a member of the medical profession. However, because the admission of her testimony did not
result in harm, appellant's conviction does not warrant reversal. Appellant's remaining points of
error are overruled in accordance with the discussion above. The judgments of conviction are
affirmed.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson: Opinion by Justice Kidd;

 Concurring Opinion by Justice Patterson

Affirmed

Filed: March 28, 2002

Publish

1. The victims did not live with their father.
2. The Medical Liability and Insurance Improvement Act contains the following definitions:


"Physician" means a person licensed to practice medicine in this state.


"Health care provider" means any person, partnership, professional association,
corporation, facility, or institution duly licensed or chartered by the State of Texas
to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist,
or nursing home, or an officer, employee, or agent thereof acting in the course and
scope of his employment.


Tex. Rev. Civ. Stat. Ann. art. 4590i, §1.03 (West Supp. 2002).
3. The Beaumont court of appeals found that the medical care component of Rule 803(4) was
satisfied because the clinical social worker practiced with physicians and the patient/victim had been
referred to the social worker for treatment by her family practitioner.
4. Art. 36.29. If a Juror Dies or Becomes Disabled

 


 Not less than twelve jurors can render and return a verdict in a felony case. It
must be concurred in by each juror and signed by the foreman. Except as
provided in Subsection (b), however, after the trial of any felony case begins and
a juror dies or, as determined by the judge, becomes disabled from sitting at any
time before the charge of the court is read to the jury, the remainder of the jury
shall have the power to render the verdict; but when the verdict shall be rendered
by less than the whole number, it shall be signed by every member of the jury
concurring in it.


 
5. In deciding Whaley v. State, 717 S.W.2d 26, 31 (Tex. Crim. App. 1986), the court of criminal
appeals discussed a previous case in which it chose to follow other courts that had defined
"constructive transfer." See Rasmussen v. State, 608 S.W.2d 205, 209-10 (Tex. Crim. App. 1980)
(adopting State v. Ellis, 239 S.E.2d 670 (W.Va. 1977); State v. Guyott, 239 N.W.2d 781 (Neb.
1976)). Therefore, by the time Whaley was decided, two years after the court had originally defined
"constructive transfer" in Rasmussen, that term had a recognized particular meaning. The term
"caused" lacks a similar pedigree.