

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00111-CR

_____

CAREY DONYELL SHIELDS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 54th Judicial District Court
McLennan County, Texas
Trial Court No. 2007-32-C2

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

A McLennan County[1] jury convicted Carey Donyell Shields of aggravated assault, threat with a deadly weapon,[2] in pointing a handgun at Tarrah Williams. Shields raises two points of error: (1) abuse of discretion in the trial court's sua sponte supplemental charge to the already-deliberating jury; and (2) fundamental error in several of the State's voir dire comments.

**Facts**

The primary contested issue at trial was whether Shields pointed the gun at Williams and, if so, whether that was intentional or accidental. On the day of the incident, Shields was driving Williams' boyfriend's car while the boyfriend was in jail. After Williams confronted Shields, Shields drove at Williams, came to a quick stop, jumped out of the car, and pulled out a gun. Williams testified Shields "pointed it at me" and "pulled the thing back." Shields then laid the gun on the roof of the car. On cross-examination, Williams admitted she did not indicate in her written statement made at the scene that Shields had pointed the gun at her, but asserted that she had told this fact to the officer at the scene.

---

[1] This case having been transferred to the Sixth Court of Appeals pursuant to the docket equalization program.

[2] *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2007) (assault by intentionally or knowingly threatening another with imminent bodily injury, and aggravated assault for use or exhibition of deadly weapon during assault, respectively).

*Extraneous-Offense Evidence*

Officer Heath Mynar testified to finding plastic baggies consistent with drug packaging and crack cocaine on Shields. Mynar believed Shields was under the influence of narcotics at the time he was arrested. Mynar stated that Shields rambled, sweated, was "geeking" (coming down off a high), told Mynar "stuff . . . you don't tell an officer," and inexplicably stayed at the scene with the gun for about thirty minutes until officers arrived. Mynar testified that Shields also volunteered several times that he was under the influence and had been doing crack all night. Mynar testified that Shields "told me several times he's a dope dealer and he needed to be off the streets" and that dope dealers with guns are going to wind up shooting kids.

A chemist for the Texas Department of Public Safety (DPS) testified that the plastic baggies found on Shields contained .64 grams of crack cocaine.

**Limiting Instruction**

On Shields' motion in limine to exclude evidence of the crack cocaine and the arrest for that drug possession, the court ruled that the evidence was admissible as "part of the res gestae." The evidence of Shields' drug possession, of his being under the influence at the scene, and of his statements regarding being a drug dealer were all admitted into evidence without further objection from Shields.[3]

---

[3]Shields does not appeal the admission of the evidence and concedes that at least some of the drug evidence is relevant as res gestae.

3

The initial charge given the jury contained no limiting instruction regarding the apparent extraneous offenses; arguments to the jury were given after it had been presented that charge. Shields argued that the drug evidence was there to help the jury understand what had happened that day, but that the jury should focus only on the gun incident while deliberating.

After final arguments and after the jury had begun its deliberations, the court sua sponte supplemented the charge with an additional instruction for it to consider other crimes, wrongs, or acts only if the jurors believed beyond a reasonable doubt the acts to have been committed by Shields and then only for "determining the intent, motive, or absence of mistake or accident." Though at the time of the supplemental charge Shields affirmatively noted he had no objection, Shields now asserts the supplemental charge was erroneous under Article 36.16 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.16 (Vernon 2006).

*Charge Error: Preservation and Harm*

As regards an alleged error in the jury charge, "an affirmative denial of objection, as in this case, shall be deemed equivalent to a failure to object. An appellant may raise such unobjected-to charge error on appeal, but may not obtain a reversal for such error unless it resulted in egregious harm." *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004).

For further articulation of the standard for reversal for unobjected-to error under Article 36.16, we look further to Article 36.19. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *see also Flores v. State*, 224 S.W.3d 212, 212–13 (Tex. Crim. App. 2007). Article 36.19 provides

4

that the judgment will not be reversed on the basis of jury charge error under Article 36.16 "unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19. The Texas Court of Criminal Appeals has analyzed Article 36.19 under the *Almanza*[4] framework: "error that was called to the court's attention will lead to reversal if there was some harm to the appellant, but unobjected-to error calls for reversal only if it was so egregious as to deprive the appellant of a fair and impartial trial." *Flores*, 224 S.W.3d at 213.

*Analysis*

Article 36.16 provides, in relevant part, "After the argument begins no further charge shall be given to the jury. . . ." TEX. CODE CRIM. PROC. ANN. art. 36.16. In addition to the few statutory exceptions to this statutory requirement (which do not apply in this case), a trial court may also, at any time before verdict, correct its charge if it is convinced that an erroneous charge has been given. *Smith v. State*, 898 S.W.2d 838, 854–55 (Tex. Crim. App. 1995); *Bustillos v. State*, 464 S.W.2d 118, 125–26 (Tex. Crim. App. 1964). Shields asserts on appeal, without providing authority or supplying analysis, that the charge as originally given was not erroneous and that it was, therefore, error under Article 36.16 to have supplemented it.

In determining whether the original charge was erroneous, we note that a limiting instruction is not required when same transaction contextual (i.e., res gestae) evidence is involved. *See*

---

[4]*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

*Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001) (for evidence admitted for all purposes, a limiting instruction on the evidence is not "within the law applicable to the case," and is not required); *Camacho v. State*, 864 S.W.2d 524, 535 (Tex. Crim. App. 1993) (finding no error in refusal to submit limiting instruction). Moreover, even when a limiting instruction is appropriate, "a limiting instruction concerning the use of extraneous offense evidence should be requested, and given, in the guilt-stage jury charge *only if* the defendant requested a limiting instruction at the time the evidence was first admitted." *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) (emphasis added). Shields never requested a limiting instruction. As the cases indicate the court committed no error in omitting the limiting instruction in its original charge, we cannot say the court's charge here was erroneous as originally given. As such, the court should not, under Article 36.16, have given the deliberating jury the supplemental instruction.

Nonetheless, we do not find egregious harm in the untimely supplementation of the charge. In assessing harm, we may consider 1) the charge itself; 2) the state of the evidence, including contested issues and the weight of the probative evidence; 3) arguments of counsel; and 4) any other relevant information revealed by the record of the trial as a whole. *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex. Crim. App. 1996).

We find the charge itself to be the most important consideration in the harm analysis in this case. Shields contends that the late instruction given to the already-deliberating jury "highlighted" the use of the extraneous offense evidence for the particular purpose of determining intent, motive,

or absence of accident or mistake.[5] Indeed, the Texas Court of Criminal Appeals has noted, in determining that a court has no sua sponte duty to give a limiting instruction, that a defendant might be better off without such an instruction. *Delgado*, 235 S.W.3d at 250. In some circumstances, a limiting instruction "would serve only to remind the jury of what it has heard or to re-emphasize the evidence in the minds of the jurors, and perhaps to suggest to the jury a use for the evidence which is best left unmentioned." *Id.* at 250 n.25 (quoting 1 Christopher B. Mueller & Laird C. Kirkpatrick, FEDERAL EVIDENCE § 41 at 221–22 (2d ed. 1994)). Indeed, a facially-neutral jury instruction might even improperly comment on the weight of the evidence "by singling out that evidence and inviting the jury to pay particular attention to it." *Brown*, 122 S.W.3d at 800–01. This is especially so when, in context, the instruction is "simply unnecessary" and fails to clarify the law. *Id.* at 801. We are cognizant that such emphasis may only be compounded when the unnecessary instruction is supplemental and given to an already-deliberating jury.

But, any such harm of this type in this case would be speculative. "Under the *Almanza* standard, the record must show that a defendant has suffered actual, rather than merely theoretical, harm. . . ." *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). While the supplemental charge was unnecessary, it was not otherwise incorrect; in other words, the jury was, indeed, allowed to consider the evidence for the instructed purposes. Because the extraneous-offense evidence was

---

[5]Shields does not assert that the late supplemental instruction constituted an improper comment on the weight of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007); *Brown v. State*, 122 S.W.3d 794 (Tex. Crim. App. 2003).

received without such a limiting instruction, it became part of the general evidence and could be used for all purposes. *See Hammock*, 46 S.W.3d at 895. The availability of the evidence for all purposes necessarily includes its use for determination of intent, motive, or absence of accident or mistake. In other words, the subsequently-charged "limited" purposes are merely a subset of the earlier-charged purposes.

We additionally note that the evidence of guilt was strong. Several witnesses, including the victim, offered the same version of events. The "inconsistency" between Williams' written and oral statements—as to whether or not Shields pointed the gun at her—was explained by Williams' reference to the fear she still felt while writing the statement at the scene after the police had arrived and the incident had been gotten under control. Several witnesses testified to the fact that Williams' oral statements at the scene were consistent with her later testimony to the jury. Shields was found at the scene with the gun which was later discovered to have a chambered bullet; from this, the jury could find further corroboration of Williams' assertion that Shields had cocked the gun and pointed it at her.

We are cognizant that Shields' counsel, in closing argument, urged the jury to focus only on the evidence of the alleged assault to the exclusion of the drug-related evidence. However, we note that the jury was not constrained under the then-prevailing instructions to do so. The jury was free to find from Shields' "acting crazy, having dope" that he had intended to threaten Williams with the gun, as the State had urged in its argument.

8

On the record as a whole, we cannot find that the error in submitting the supplemental charge to the already-deliberating jury affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *See Almanza*, 686 S.W.2d at 172 (op. on reh'g). We find the record as a whole shows the charge error was not so egregious as to deprive Shields of a fair and impartial trial. The point of error is overruled.

**Improper Voir Dire Comments**

Shields' second point of error is that the State's voir dire comments cumulatively denied him a fair trial.

*Preservation of Error*

At trial, Shields lodged no objection to the State's comments about which he now complains. Shields now contends that the State's comments constituted fundamental error so that no objection was required to preserve the complaint for appeal. *See Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993). Fundamental error must be so egregious it prevents a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171.

In voir dire, some comments by the trial court may be so fundamentally prejudicial that a defendant's right to a fair trial is denied; such error is not waived by failure to object. *See Blue v. State*, 41 S.W.3d 129, 130–31 (Tex. Crim. App. 2000) (plurality op.). In *Blue*, it was fundamental error for the judge to have said, among other comments, "Frankly, obviously, I prefer the defendant to plead," and to have apologized to the jury for the apparent waste of time in having to attend trial.

9

*Id*. at 130. This case, as contrasted to *Blue*, presents no prejudicial voir dire comment by the court; rather, Shields complains of voir dire comments made by the State.

Shields presents no authority for finding fundamental error in the State's, as opposed to the trial court's, voir dire comments. Several appellate courts have hinted, though not held, that fundamental error under *Blue* is not extended to comments by the State. *See, e.g., Salcido v. State*, No. 08-04-00346-CR, 2006 WL 1132865 (Tex. App.—El Paso April 27, 2006, no pet.) (not designated for publication); *Clement v. State*, No. 08-03-00463-CR, 2005 WL 1593464 (Tex. App.—El Paso July 7, 2005, no pet.) (not designated for publication); *Galvez v. State*, No. 04-04-00460-CR, 2005 WL 1458228, at *1–2 (Tex. App.—San Antonio June 22, 2005, pet. ref'd) (mem. op., not designated for publication) (declining to find fundamental error in pervasive prosecutorial misconduct attacking defendant over counsel's shoulders in voir dire, during testimony, and in closing); *Beltran v. State*, 99 S.W.3d 807, 812 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (addressing prosecutor's voir dire comments in addition to judge's comments).

Nonetheless, we will examine the State's comments to determine if they were so egregious that Shields was prevented by those comments to a fair and impartial trial and, thus, was not required to object timely in order to complain of the comments on appeal. In our review, we should look at allegedly improper voir dire statements in context. *See Tuttle v. State*, No. 06-06-00251-CR, 2007 WL 2324004, at *2 (Tex. App.—Texarkana Aug. 16, 2007, no pet.) (mem. op., not designated for publication).

*State's Remarks:  Presumption of Innocence*

Shields first complains of the State's comments relating to the presumption of innocence. The State commenced its voir dire by stating:  "I am very proud to be part of a system in which individuals that are charged with crimes can plead not guilty and the burden being upon the State to prove them guilty beyond a reasonable doubt."  After explaining the concept of a bifurcated trial generally, the State continued:  "And also, because of the burden of proof being upon the State, the Defense does not have to put on any witnesses whatsoever.  The -- like I said, the burden of proof is on the State . . . ."  Later in the voir dire, the State make the complained-of comments (with the complained-of parts emphasized):

> *And as I've indicated to you, there is a legal fiction as far as presumption of innocence.  As the Defendant sits here right now, he is presumed innocent and - - but that can change after you've heard some evidence* that you believe beyond a reasonable doubt as to all of the different elements of the offense.  And if you feel that the State has proven that, then that presumption is a rebuttal [sic] presumption which can change to guilty.  But do you recognize that everyone that is charged with a criminal offense is presumed innocent until proven guilty?  Anyone have a problem with that?

(Emphasis added.)  Shields asserts, without presenting any authority, that, in using the phrase "legal fiction," the State "told the jury that the presumption is nothing more than legal gibberish, a lie."

A "legal fiction" is an "assumption that something is true even though it may be untrue, made esp. in judicial reasoning to alter how a legal rule operates; specif., a device by which a legal rule or institution is diverted from its original purpose to accomplish indirectly some other object."  BLACK'S LAW DICTIONARY 913 (8th ed. 2004); *see also* MERRIAM-WEBSTER'S COLLEGIATE

11

DICTIONARY 465 (11th ed. 2006) (defining "fiction," in sense of "legal fiction" as: "an assumption of a possibility as a fact irrespective of the question of its truth"); *and see* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 710 (11th ed. 2006) (defining "legal," in sense of "legal fiction" as: "created by the constructions of the law"). However, the first definition of "fiction" in the dictionary (and that commonly used and understood in our society) is "something invented by the imagination or feigned . . . an invented story." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 465. Therefore, while the term "legal fiction" may be technically true in the absolutely strict legal sense of the word and while it may well be fully understood by those who are quite familiar with legal terminology, using that phrase to explain to a jury the concept of the presumption of innocence could more easily mislead than elucidate.

Though we find the State's choice of phrases in characterizing this most fundamental right to be ill-advised and dangerously close to improper, we note that the State's comments, in context, reveal a detailed and generally correct explanation of a defendant's presumption of innocence and the State's burden of proof on the evidence presented. The State's comments, when viewed in context, are not so egregious as to rise to the level of fundamental error. *Cf. Sneed v. State*, Nos. 05-06-00389-CR, 05-06-00390-CR, 05-06-00391-CR, 2007 WL 1125074, at \*5–6 (Tex. App.—Dallas April 17, 2007, pet. ref'd [3 pets.]) (not designated for publication) (State's voir dire discussion, at veniremember's instigation, of adequate court security and the Atlanta courthouse shootings not

12

fundamental error, since followed by statement of the presumption of innocence).  As such, Shields

has failed to preserve error in failing to object.  *See* TEX. R. APP. P. 33.1; *Marin*, 851 S.W.2d 275.

*State's Remarks:  Defendant's Testifying*

Shields also complains of the State's comments relating to the testimony of the defendant.

The State commented:

> *Do you understand that the State is prohibited by law, the State from calling the Defendant as a witness?*  The Defendant has a constitutional privilege not to be called as a witness to give testimony against himself.  This isn't just for this type of case.  This is for any type of case.  *I know all of us would like to be able to hear from everyone.*  But would anyone fault or hold that against the State or the Defendant if he were not to take the stand and testify as a witness in this matter knowing that it's a Constitutional right and privilege that we all have?  Anyone over here, would they hold that against the State if we did not call him or he did not take the stand?
>
> . . . .
>
> *And do you recognize that if he chooses to testify, that is his decision or decision of him and his attorney, and if he chooses to testify, he can even overrule his attorney and take the stand and testify that wild horses cannot keep him off that stand?  So if he makes the decision to testify, that is his decision*, and whatever that decision may be, will you hold it against him or the State as to whether or not he testifies?  Anyone over here?

Again, we look at allegedly improper voir dire statements in context.  *See Tuttle*, 2007 WL

2324004, at *2.  Shields does not specify, in argument or authority, how the complained-of

statements regarding the Fifth Amendment right are allegedly improper.  At one point, Shields seems

to assert that any "comments which concerned Appellant's constitutional rights" or "drives home"

13

the rights are improper.  Shields also asserts that the State "attacked," "undermined," and "brought into question" Shields' rights.

But merely mentioning the defendant's rights is not improper or in error.  *See, e.g.*, *Allen v. State*, 536 S.W.2d 364, 367 (Tex. Crim. App. 1976) (voir dire comments regarding defendant's choice to testify, and voir dire statement regarding defendant's credibility as witness, if he does testify); *Hill v. State*, 480 S.W.2d 670 (Tex. Crim. App. 1972) (voir dire comments regarding defendant's choice to testify, no error in denial of mistrial); *McCary v. State*, 477 S.W.2d 624 (Tex. Crim. App. 1972) (voir dire comments regarding defendant's choice to testify).  The error is not in mentioning the defendant's choice of whether to testify, but in voir dire comments that allude to or comment on the *failure* to testify as a circumstance against the defendant.  *See Hill*, 480 S.W.2d at 674; *see also* Tex. Code Crim. Proc. Ann. art 38.08 (Vernon 2005); *cf. Moore v. State*, 849 S.W.2d 350 (Tex. Crim. App. 1993) (same, in trial argument).

The Houston First Court has declined to find fundamental error in the State's general voir dire explanations of the law regarding a defendant's testifying.  *See Britt v. State*, No. 01-91-00103-CR, 1992 WL 76456, at *1 (Tex. App.—Houston [1st Dist.] April 16, 1992, no pet.) (not designated for publication).  The Houston court noted that, because the prosecutor's statements were made before anyone knew if the defendant would or would not testify, the comments "could not have referred to a failure to testify that had not yet occurred."  *Id.*  Neither did the court find that the comments manifestly intended or were of such character that the jury would necessarily take them as a

14

comment on the subsequent failure to testify. *Id.*; *see also Myers v. State*, 527 S.W.2d 307, 308–09 (Tex. Crim. App. 1975); *Beltran*, 99 S.W.3d at 811–12 (refusing to find fundamental error in prosecutor's voir dire statement that she believed defendant guilty). During a voir dire in which it is not yet known if the defendant will testify, it is not error to qualify the jury by correct statements of the law regarding a defendant's rights to testify or not testify. *See Jackson v. State*, 536 S.W.2d 371, 375 (Tex. Crim. App. 1976).

The State's more florid language choices regarding a testifying defendant were part of a generally even and correct voir dire on the relevant law. The comments, in context, could not naturally and necessarily be interpreted by a jury to comment on Shields' failure to testify. *See Garcia v. State*, 887 S.W.2d 862, 877 n.11 (Tex. Crim. App. 1994). Neither are they of such nature as to undermine Shields' Fifth Amendment rights or otherwise constitute fundamental error of constitutional dimension. As such, Shields has failed to preserve error in failing to object. *See* TEX. R. APP. P. 33.1; *Marin*, 851 S.W.2d 275.

Point of error two is overruled.

Accordingly, we affirm the judgment.


Bailey C. Moseley
Justice

Date Submitted:     March 11, 2008
Date Decided:       April 9, 2008

Do Not Publish

15